UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------- X

ZAQUANNA ALBERT, individually, ZAQUANNA ALBERT, as the parent and natural guardian of Z.I., a minor, and ZAQUANNA ALBERT, as parent and natural guardian of Z.S., a minor,

                                  Plaintiffs,

   -against-

THE CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT OFFICER WAYNE ISAACS; and Police Officers "JOHN and/or JANE DOES" 1, 2, 3, ETC. (whose identity are unknown but who are known to be personnel of the New York City Police Department), all of whom are sued in their individual capacity,

                                  Defendants.

--------------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL
DEMANDED**

       Plaintiffs ZAQUANNA ALBERT, individually and as parent and natural guardian of Z.I. and Z.S., by their attorneys, Beldock Levine & Hoffman LLP, as and for her Complaint against the defendants, alleges as follows:

### PRELIMINARY STATEMENT

      1.  This civil rights action seeks redress through 42 U.S.C. § 1983 and New York State lawfor injuries plaintiffs sustained when New York City Police Department ("NYPD") Officer WAYNE ISAACS unlawfully shot and killed Delrawn Small and unknown members of the NYPD conspired to cover up the events leading to Mr. Small's murder.

      2.    Plaintiffs seek (i) compensatory damages for, *inter alia*, the right to familial association, psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorneys' fees, as this Court deems equitable and just.

## JURISDICTION

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

4.      Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

5.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiff's claims took place.

## JURY DEMAND

6.      Plaintiffs demand a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

## THE PARTIES

7.      Plaintiff ZAQUANNA ALBERT is a citizen of the United States and the State of New York, and was at all times relevant to this complaint a resident of Kings County, City and State of New York.

8.      Plaintiff ZAQUANNA ALBERT is the mother and natural guardian of Z.I. and Z.S., who are both minors. At all times relevant to this complaint, Z.I., was a 14-year-old high school student and Z.S. was approximately five months old. At all times relevant to this complaint Z.I. and Z.S. were residents of Kings County, City and State of New York.

9.      Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

10.     The City is authorized by law to maintain a police department, and does maintain the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

11.     Defendant WAYNE ISAACS is a New York City Police Officer who unlawfully shot and killed Delrawn Small, Ms. ALBERT's partner and the father of Z.S., as he was driving home from the 79th Precinct on July 4, 2016.

12.     Defendant DOES are members of the NYPD who conspired with defendant ISAACS to cover up the events leading up to the murder of Mr. Small.

13.     Upon information and belief, defendants ISAACS and DOES are still NYPD Police Officers.

14.     At all times relevant herein, ISAACS and DOES acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

15.     At all times relevant herein, defendants ISAACS and DOES violated clearly established rights and standards under the Fourteenth Amendment to the United States Constitution, of which a reasonable police officer in their circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

16.     Plaintiffs served Notices of Claim upon the City of New York within 90 days of the incident.

17.    On October 25, 2016, the New York City Law Department sent plaintiffs a letter stating, in sum and substance, that the 50-h hearings would not proceed until the conclusion of the criminal trial of defendant ISAACS.

18.    At the time of this filing, defendant ISAACS's criminal trial is still pending and plaintiffs have not received further notification from the City.

19.    More than 30 days have elapsed since plaintiffs served their Notices of Claim and the City has not offered adjustment or payment for their claims.

**STATEMENT OF FACTS**

20.    Plaintiff ZAQUANNA ALBERT is a mother of three and a lifelong Brooklyn resident.

21.    ALBERT met Delrawn Small in or about February of 2011.

22.    ALBERT and Mr. Small began dating in or about September of 2012.

23.    Mr. Small moved in with ALBERT and her children in March of 2013 and they harmoniously and continuously lived together until Mr. Small was shot and killed by defendant ISAACS on July 4, 2016.

24.    Mr. Small is the father of ALBERT's youngest child, Z.S.

25.    At approximately 11:45 PM, on July 3, 2016, Mr. Small, along with plaintiffs ALBERT, Z.I., and Z.S.  were driving to their Brooklyn home.

26.    Shortly before midnight, Mr. Small, ALBERT, Z.I., and Z.S. left the party and drove home.

27.    As Mr. Small, ALBERT, Z.I., and Z.S. drove down Atlantic Avenue in Brooklyn, they observed a car that was driven by defendant ISAACS, speeding and swerving across all lanes of traffic without using a turn signal.

4

28.    Upon information and belief, defendant ISAACS had just completed his tour of duty at the 79th precinct.

29.    Defendant ISAACS cut off Mr. Small's car.

30.    Upon information and belief, Mr. Small was upset because defendant ISAACS came close to hitting a car that was carrying his young child, his live-in partner, and his live-in partner's daughter.

31.    Shortly after being cut off by defendant ISAACS, both cars stopped at a traffic light at the intersection of Atlantic Avenue and Bradford Street.

32.    After stopping at the intersection, Mr. Small got out of his car and approached defendant ISAACS's car, which was approximately one lane away.

33.    As Mr. Small approached defendant ISAAC's car, defendant ISAAC's pulled out a gun and shot Mr. Small three times.

34.    Defendant ISAACS was required to carry this type of firearm by the defendant CITY

35.    ALBERT, Z.I., and Z.S. were within the zone of danger of the shooting, approximately seven feet away from defendant ISAACS's car, and watched, in a clear and unobstructed view, defendant ISAACS shoot Mr. Small in the head and torso.

36.    Following the defendant ISAACS shooting Mr. Small, ALBERT, fearing her safety and the safety of her children, climbed into the driver seat and drove approximately two blocks down Atlantic Avenue before stopping and parking the car.

37.    After being shot, Mr. Small stumbled towards the back of defendant ISAACS's car and fell to the ground.

38.    Officer ISAACS did not attend to Mr. Small after the shooting.

39.    Mr. Small was later pronounced dead at the scene of the incident.

40.    Upon information and belief, NYPD officers are required to carry a firearm while they are off-duty, except under limited circumstances that the NYPD outlines.

41.    Upon information and belief, the NYPD approves the type of firearms off duty officers are permitted to carry.

42.    Upon information and belief, defendant ISAACS was required to be carrying a gun at the time that he shot and killed Mr. Small.

43.    Upon information and belief, the NYPD's regulations state that members of the service are strictly accountable for their conduct at all times, even while off duty and that all members of the service are subject at all times to the provisions of the NYPD Patrol Guide and other department regulations.

44.    Upon information and belief, the location in which defendant ISAACS shot and killed Mr. Small was within his police jurisdiction.

45.    Upon information and belief, defendant ISAACS's first action after shooting Mr. Small was calling his Police Benevolent Association (P.B.A.) representative.

46.    Upon information and belief, defendant ISAACS later called 911.

47.    Approximately ten minutes after the shooting Emergency Medical Technicians ("EMT") and members of the NYPD arrived at the scene.

48.    Upon information and belief, the NYPD interviewed defendant ISAACS and ALBERT at the scene of the shooting.

49.    Following the shooting, NYPD sources provided statements to the media about the incident that were factually inaccurate in order to cover up defendant ISAACS's misdeeds.

50.     NYPD sources falsely told the media that defendant ISAACS was assaulted by Mr. Small.

51.     NYPD sources falsely told the media that there was no opportunity for defendant ISAACS to de-escalate the situation.

52.     NYPD sources falsely told the media that Mr. Small repeatedly punched defendant ISAACS in the head;

53.     NYPD sources falsely told the media that defendant ISAACS was a victim, trapped in his vehicle;

54.     NYPD sources told the media that defendant ISAACS discharged his firearm as he was being assaulted by Mr. Small.

55.     NYPD sources further falsely stated that video surveillance footage showed Mr. Small attacking defendant ISAACS in his car.

56.     On or about July 8, 2016, the New York Post obtained and released a surveillance video contradicting the NYPD's official account of the incident between Mr. Small and defendant ISAACS.

57.     The video released by the New York Post shows defendant ISAACS shooting Mr. Small almost immediately after he approached defendant ISAACS's vehicle.

58.     Upon information and belief, had the New York Post not released the surveillance video of defendant ISAACS shooting and killing Mr. Small, the NYPD's cover-up of the incident would have continued with the false narrative of Mr. Small assaulting defendant ISAACS.

59.     On July 11, 2016, a week after Mr. Small was murdered, defendant ISAACS was stripped of his gun and badge.

60.     The cover up by members of the NYPD that occurred in this case is not an isolated event. Instead, it is a manifestation of a pattern and practice of misconduct of which members of the NYPD provide factually inaccurate statements in order to protect other members of the NYPD who have acted unlawfully.

**The City's Longstanding Deliberate Indifference to the Unlawful Use of Firearms In Relation to Road Rage Incident by Officers**

61.     The City of New York and the NYPD bear responsibility for this tragic incident.

62.     The failure of the City and the NYPD to adequately respond to the unlawful use of firearms by off-duty officers engaged in fits of road rage shows deliberate indifference and a failure to adopt and/or enforce policies addressing the use and misuse of firearms by off-duty officers.

63.     The City and NYPD knew, or should have known, that there was a failure of the NYPD training facility to evaluate the physical and mental state of officers after they have completed often extremely stressful and rigorous tours of duty, specifically while driving home after completing a tour of duty.

64.     Apart from the events described herein, there  have been several other incidents in which members of the NYPD have engaged in fits of road rage, many of which involved the unlawful use of a firearm, for example:

        a.  Sean Maxwell, an off-duty NYPD officer, allegedly threatened another motorist with a gun in Lynbrook, Long Island;

        b.  Donald Vale, an off-duty NYPD officer, was arrested after he allegedly brandished a gun at and tailgated another motorist;

        c.  An off-duty NYPD sergeant allegedly brandished a gun at bicycle delivery driver in Greenwich Village without lawful justification; and

        d.  NYPD Detective Patrick Cherry, was caught on video screaming at an Uber driver in a fit of road rage.

65.     The City of New York and the NYPD are responsible for Mr. Small's death and, thus, the zone of danger in which plaintiffs were placed. The City's failure to address the unlawful use of firearms by members of the NYPD during fits of road rage constitutes a deliberate indifference to adopt and/or enforce adequate policies, procedures, and practices to address longstanding problems of unlawful firearm use by police officers.

66.     The City and the NYPD's deliberate indifference to adequately respond to the misuse of firearms by police officers during fits of road rage includes a failure to adopt and/or enforce policies addressing officers who are not fit for duty.

67.     Defendant City, as a matter of policy and practice, has with deliberate indifference, failed to adequately discipline, train, monitor, treat or otherwise direct police officers, including the defendant ISAACS, with regard to unauthorized use of firearms.

68.     Defendant City, as a matter of policy and practice, has with deliberate indifference, failed to properly investigate the background, beliefs, and attitudes of prospective police officers in order to ensure it hires only police officers that respect and honor the constitutional rights of individuals, thereby causing the NYPD, including defendant ISAACS, to engage in the unlawful conduct described herein.

69.     As a result of the defendants' conduct, plaintiffs sustained and continue to suffer emotional and psychological pain and deprivation of their constitutional rights

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process**

70.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

71.     Defendants' unlawful use of force that resulted in the murder of Mr. Small violated plaintiffs' right to substantive due process of familial association under the Fourteenth Amendment to the United States Constitution.

72.     Defendants' acts were outrageously arbitrary, oppressive, and conscience-shocking as to constitute a gross abuse of governmental authority.

73.     In committing the acts complained of herein, defendants acted in bad faith and under color of law.

74.     As a direct and proximate result of being denied their constitutional right to be free from the deprivation of liberty without due process, plaintiffs have suffered injuries and damages.

75.     The unlawful conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 *Claim Against Defendant City*

76.     Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

77.     Defendant City knew of the longstanding problem of officers' unlawful use of firearms during fits of road rage and its causative relationship to violent acts by on-duty and off-duty police officers.

78.     Defendant City knew or should have known that their failure to adequately address these issues within the department had caused problems in the past, and would continue to cause problems in the future, including violations of constitutional rights because of the failure to adopt and implement adequate policies, procedures and practices and to adequately screen, train, supervise and/or discipline police officers engaging in, or likely to engage in, such behavior.

10

79.    The deliberate indifference on the part of the City directly and proximately caused the deprivation of plaintiffs' constitutional rights of familial association secured by the Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. 1983.

80.    At all times material to this complaint, defendant City failed to properly train, screen, supervise, or discipline its employees and police officers, including the individual defendants and failed to inform the individual defendant's supervisors of their need to train, screen, supervise or discipline the individual defendants.

81.    The policies, practices, customs, and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including the Fourteenth Amendment.

82.    As a result of the foregoing, plaintiff was deprived of liberty, suffered emotional distress, humiliation, costs and expenses, and was otherwise damaged and injured

### THIRD CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

83.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

84.    Defendants did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused plaintiffs to experience severe mental and emotional distress, suffering, and damage to name and reputation.

85.    Defendants committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiffs' rights and are therefore liable for punitive damages.

**FOURTH CAUSE OF ACTION**
**Negligence**

86.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

87.    Defendants owed plaintiffs a duty of care, including the duty to exercise due care in the course of their duties as NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

88.    Defendants through the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

89.    All of these acts were performed without any negligence on the part of plaintiffs and were the proximate cause of the injuries to plaintiffs.

**FIFTH CAUSE OF ACTION**
**Negligent Infliction of Emotional Distress**

90.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

91.    As police officers acting in the performance of their duties, defendants owed plaintiffs a duty of care.

92.    In breach of that duty, defendants endangered plaintiffs' safety and caused them to fear for their safety.

93.    As a result, plaintiffs suffered emotional distress.

**SIXTH CAUSE OF ACTION**
**Negligent Hiring, Training, and Supervision Under State Law;**
**Defendant City of New York**

94.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

95.    The City is liable to plaintiffs because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants, and/or employees employed and/or the NYPD with regard to their aforementioned duties.

## SEVENTH CAUSE OF ACTION
### *Respondeat Superior*

96.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

97.    At all relevant times, defendants were employees of the City and were acting within the scope of their employment.

98.    The City is therefore vicariously liable under the doctrine of r*espondeat superior* for the actions of defendants set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, plaintiffs demand the following relief against the defendants, jointly and severally:

(a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)    punitive damages to the extent allowable by law;

(c)    attorney's fees;

(d)    the costs and disbursements of this action;

(e)    interest; and

(f)    such other and further relief as this Court deems just and proper.

13

Dated: June 30, 2017
      New York, New York

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400



Keith Szczepanski
David B. Rankin

*Attorneys for Plaintiff Zaquanna Albert,*
*Individually and as parent and natural guardian*
*of Z.I., a minor, and Z.S., a minor*