UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                          :

ZAQUANNA ALBERT, individually; ZAQUANNA :
ALBERT, as parent and natural guardian of Z.I., a:        17-cv-3957-ARR-SMG
minor; and ZAQUANNA ALBERT, as parent and:
natural guardian of Z.S., a minor,             :      NOT FOR ELECTRONIC
                          :      OR PRINT PUBLICATION
         Plaintiffs,         :
                          :      OPINION & ORDER
    -against-                :
                          :
CITY OF NEW YORK; NEW YORK CITY  :
POLICE DEPARTMENT OFFICER WAYNE  :
ISAACS; and Police Officers JOHN AND/OR  :
JANE DOES 1, 2, 3, ETC.,             :
                          :
         Defendants.        X


----------------------------------------------------------
                          :
WENONA D. SMALL, as Administratrix of the:
Estate of DELRAWN D. SMALL DEMPSEY, and on:
her own behalf and on behalf of his children,:
SHARIAH SEWARD, S.S., an infant by his mother:    17-cv-04315-ARR-SMG
and natural guardian GLADYS PARKER; and Z.S.,:
an infant by his mother and natural guardian:    NOT FOR ELECTRONIC
ZAQUANNA ALBERT,              :     OR PRINT PUBLICATION
                          :
         Plaintiffs,         :     OPINION & ORDER
                          :
    -against-               :
                          :
CITY OF NEW YORK and NEW YORK CITY  :
POLICE DEPARTMENT OFFICER WAYNE   X
ISAACS,

         Defendants.

----------------------------------------------------------


ROSS, United States District Judge:

1

In the early-morning hours of July 4, 2016, Delrawn Small was fatally shot by Wayne Isaacs, a New York City police officer who had recently completed his tour of duty at the 79th police precinct in Brooklyn. At the time of his death, Small was driving home from a party with his live-in partner Zaquanna Albert, his son Z.S., and Ms. Albert's daughter Z.I. As Small exited his car to approach Isaacs about his erratic driving, Isaacs rolled down his driver's-side window, pulled out his gun, and shot Small three times in the head and torso. Small was later pronounced dead at the scene of the shooting, and Albert, Z.I., and Z.S. learned of his death while they were being questioned by police about the events leading up to the shooting at a nearby precinct.

Two sets of plaintiffs subsequently brought actions under 42 U.S.C. § 1983 and New York state law, seeking redress for injuries arising from Small's death. Albert, Z.I., and Z.S. (collectively, "the Albert plaintiffs") filed suit against Isaacs, the unnamed police officers who escorted plaintiffs to the precinct after the shooting, and the City of New York ("the City"). Separately, Wenona D. Small, Mr. Small's wife and the administratrix of his estate, filed suit against Isaacs and the City on her own behalf and on behalf of Small's three children: Shariah Seward, S.S., and Z.S. (collectively, "the Small plaintiffs").

Now, the City has moved to dismiss all claims brought against it as a municipal actor and employer; the City is not representing Isaacs in these actions, and has not moved to dismiss the Albert plaintiffs' claims against the unnamed officers. For the following reasons, the City's motions to dismiss are granted. However, because my decision regarding the City's liability does not foreclose the plaintiffs' claims against Isaacs or the unnamed officers, those claims remain, and I retain jurisdiction over both cases.

## FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of this motion, I assume the truth of the factual allegations contained in both complaints.[1]

At approximately 11:45 P.M. on July 3, 2016, Delrawn Small[2] was driving home from a party with Zaquanna Albert, his live-in partner of three years; Z.I., Albert's fourteen-year-old daughter; and Z.S., Small and Albert's five-month-old son. *See* Am. Compl. ¶¶ 8, 22, 24, Case No. 17-cv-03957, ECF No. 25 ("Albert Am. Compl."); Am. Compl., ¶ 8, Case No. 17-cv-04315, ECF No. 31 ("Small Am. Compl."). Around the same time, Wayne Isaacs, a New York City police officer, completed his shift at the 79th police precinct and began to drive home to Queens. Albert Am. Compl. ¶ 27. Isaacs had in his possession a firearm that he was required to carry by the City while off-duty, *id.* ¶¶ 35, 41–43, and, pursuant to City policy, the firearm was fully loaded with a bullet in the chamber, *id.* ¶ 44. As the two cars drove down Atlantic Avenue, Isaacs began to "speed[] and swerv[e] across all lanes of traffic without using a turn signal." *Id.* ¶ 26. While switching lanes, he cut off Small's car shortly before both cars stopped at a traffic light at the intersection of Atlantic Avenue and Bradford Street. *Id.* ¶¶ 28, 31; Small Am. Compl. ¶ 29. Just after cutting off Small's car, Isaacs "made eye contact with the passengers in Mr. Small's car, including Albert and Z.I.[,] and exchanged looks with them." Albert Am. Compl. ¶ 29.

Isaacs's dangerous driving was upsetting to Small because Isaacs "came close to hitting a car that was carrying [Small's] young child, his live-in partner, and his live-in partner's daughter." *Id.* ¶ 30. When both cars stopped at the traffic light, Small exited his car and began walking towards

---

[1] Because the Albert plaintiffs' amended complaint contains significantly more detailed factual allegations than the Small plaintiffs' complaint, I draw the bulk of the facts from the Albert amended complaint, as both complaints arise from the same incident.

[2] In their complaint, the Albert plaintiffs refer to Mr. Small as "Delrawn Small," while the Small plaintiffs state Mr. Small's full name as "Delrawn D. Small Dempsey."

Isaacs. *Id.* ¶ 32. At that time, Isaacs's car was stopped approximately one lane away from Small's car. *Id.* As Isaacs watched Small approach him, Isaacs "falsely believed that Mr. Small may have been someone [Isaacs] had previously arrested." *Id.* ¶ 33. "[A]lmost immediately" after Small began walking toward Isaacs's car, *id.* ¶ 67, Isaacs rolled down his window, removed his gun, and fired three shots into Small's head and torso. *Id.* ¶ 35–36; Small Am. Compl. ¶ 30. Small stumbled and fell to the ground, and was later pronounced dead at the scene of the shooting after midnight on July 4. Albert Am. Compl. ¶¶ 22, 38, 40; Small. Am. Compl. ¶¶ 29–30, 43.

At the time of the shooting, Albert, Z.I., and Z.S. were approximately seven feet away from Isaacs's car, with a "clear and unobstructed view" of both Isaacs and Small. Albert Am. Compl. ¶ 36. After witnessing the shooting, Albert, "fearing for her safety and the safety of her children," immediately climbed into the driver's seat of Small's car and drove two blocks on Atlantic Avenue away from the intersection where the shooting had just occurred. *Id.* ¶ 37. She and her children later returned to the scene of the shooting, where she was interviewed by police officers who had arrived on the scene approximately ten minutes after the shooting. *Id.* ¶¶ 50–51. The police officers on the scene physically prevented Albert and her children from "aiding and comforting" Small, *id.* ¶ 52, and later took them to a police precinct to be questioned about the events leading up to the shooting, *id.* ¶¶ 54–55. Small died while Albert and her children were at the precinct. *Id.* ¶ 56.

Though the New York City Police Department originally defended Isaacs's actions, alleging that he shot Small only after Small had "repeatedly punched defendant [Isaacs] in the head," *id.* ¶ 62; *see also id.* ¶¶ 59–65, it subsequently stripped him of his gun and badge after a publicly released surveillance video showed that Isaacs shot Small "almost immediately after he approached" Isaacs's car. *Id.* ¶¶ 66–67, *id.* ¶¶ 69. Isaacs was criminally prosecuted for homicide,

but was acquitted of all charges at trial on November 6, 2017. *See* Mot. to Consolidate 2, Case No. 17-cv-04315, ECF No. 12; Mot. to Consolidate 2, Case No. 17-cv-03957, ECF No. 12.

The Small plaintiffs filed suit on June 29, 2017, in Kings County Supreme Court, soon after Wenona Small was appointed administratrix of the decedent's estate. *See* Compl., Case No. 17-cv-04315, ECF No. 1-1; *see also* Small Am. Compl. ¶ 9. The City of New York subsequently removed the case to federal court on the basis of federal-question jurisdiction. *See* Notice of Removal, Case No. 17-cv-04315, ECF No. 1. The Albert plaintiffs commenced their action on June 30, 2017, in federal court. *See* Compl., Case No. 1-cv-03957, ECF No. 1. Both cases were stayed pending the outcome of the criminal proceeding, *see* Sept. 28, 2017 Order, Case No. 17-cv-03957; Aug. 28, 2017 Order, Case No. 17-cv-04315, and were later consolidated before me for all pre-trial purposes. *See* Dec. 14, 2017 Order, Case No. 17-cv-04315; Dec. 14, 2017 Order, Case No. 17-cv-03957.

On April 6, 2018, I granted leave for both sets of plaintiffs to file amended complaints after they received the transcript from Isaacs's criminal trial. *See* Apr. 6, 2018 Order, Case No. 17-cv-03957; Apr. 6, 2018 Order, Case No. 17-cv-04315; Status Report, Case No. 17-cv-03957, ECF No. 22. The Albert plaintiffs' amended complaint, filed on June 22, 2018, lists seven causes of action. These include federal claims against the defendant officers and the City for a violation of their substantive due process right of familial association under the Fourteenth Amendment, and state law claims of negligent hiring, training, and supervision, *respondeat superior*, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. *See* Albert Am. Compl. ¶¶ 80–107. The Small plaintiffs' amended complaint, also filed on June 22, 2018, lists thirteen causes of action, including two federal § 1983 claims against the City and against Isaacs for violations of the Fourth and Fourteenth Amendments, and a variety of state law

claims, including negligent hiring, training, and retention, *respondeat superior* claims against the City for assault, battery, and wrongful death, and claims for loss of services and guidance on behalf of Small's wife and children. *See* Small Am. Compl. ¶¶ 28–106. Defendant Isaacs answered both complaints with a variety of affirmative defenses and cross-claims against the City, alleging that he was acting under "color of law," and, as such, "any liability to Plaintiffs must be assumed by his employer," the City of New York. Answer to Am. Compl. with Cross-Claims ¶ 160, Case No. 17-cv-04315, ECF No. 37; *see also* Answer to Am. Compl. with Cross-Claims, Case No. 17-cv-03957, ECF No. 30.

On July 25, 2018, the City filed motions to dismiss in both cases, arguing that neither complaint states a claim upon which relief can be granted.[3] *See* Def. City of New York's Mem. of Law in Supp. of its Mot. to Dismiss, Case No. 17-cv-03957, ECF No. 33-2 ("Albert Def.'s Mot. to Dismiss"); Def. City of New York's Mem. of Law in Supp. of Mot. to Dismiss, Case No. 17-cv-04315, ECF No. 41-2 ("Small Def.'s Mot. to Dismiss"). I granted the City an extension to file its answer to defendant Isaacs's cross-claims in both cases until the resolution of this motion to dismiss. *See* Aug. 13, 2018 Order, Case No. 17-cv-03957.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Though plaintiffs do not need to include "detailed factual allegations" in the complaint, "[t]hreadbare recitals of the elements of cause of action, supported by mere conclusory statements,

---

[3] The Albert plaintiffs requested oral argument in connection with their opposition to the City's motion to dismiss, *see* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, Case No. 17-cv-03957, ECF No. 33-3, but because I find that this motion is better resolved on the briefing, I did not hear argument in either case.

do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must construe a complaint liberally, "accepting all factual allegations . . . as true, and drawing all reasonable inferences in the plaintiff's favor." *Lundy v. Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, a court can consider materials outside of the pleadings in limited circumstances, including "documents incorporated by reference in the complaint" and documents which are deemed "integral" to the complaint because the complaint "relies heavily upon [their] terms and effect." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). A court can also consider "matters of which judicial notice may be taken," *Chambers v. Time Warner Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)), but these documents may only be considered if a plaintiff relied upon them in drafting and researching the complaint; "mere notice or possession is not enough." *Id.* Moreover, if other "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d).

In this case, the Small plaintiffs have provided seven exhibits along with their opposition brief to the City's motion to dismiss, including video footage of the shooting and testimony from defendant Isaacs's criminal trial. Because these documents and exhibits all fall outside of the category of documents I am permitted to consider on a motion to dismiss, I have not considered them in my analysis of the City's motion.[4]

## DISCUSSION

In its motions to dismiss, the City provides multiple independent and alternative bases for dismissal of the claims brought against it. Many of the arguments urged by the City, if credited, would not only result in the dismissal of the claims brought against the City, but also the dismissal of the claims brought against defendant Isaacs, who has not moved to dismiss and who is not represented by the City in this action. In deciding this motion, I find that the plaintiffs' pleadings are deficient in three primary respects: (1) they fail to allege a plausible basis for *Monell* liability against the City, (2) they fail to plausibly allege that Isaacs was operating within the scope of his employment at the time of the shooting, and (3) they fail to provide sufficient facts for a claim of negligent hiring, training or supervision. As a result, I decline to go further, mindful that "the

---

[4] In particular, the Small plaintiffs include as exhibits to their opposition motion transcripts of the trial-court testimony of defendant Isaacs and plaintiff Albert. *See* Harris L. Marks Decl., Case No. 17-cv-04315, ECF No. 41-4, Exs. C, D. As the City notes, "proceedings in another litigation" can only be considered for the *fact* of their occurrence, not the truth of the assertions. Def. City of New York's Reply Mem. of Law in Supp. of Mot. to Dismiss 2, Case No. 17-cv-04315, ECF No. 41-5 (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). While "courts routinely take judicial notice at the motion to dismiss stage of transcripts . . . which are incorporated into the complaint by reference," the transcripts can only be considered "for the purpose of determining what [the witnesses] said." *Coggins v. County of Nassau*, No. 07-CV-3624 (JFB)(AKT), 2008 WL 2522501, at *7 (E.D.N.Y. June 20, 2008), *appeal dismissed in part, aff'd in part*, 362 F. App'x 224 (2d Cir. 2010). Furthermore, in this case, neither the Albert or Small plaintiffs directly refer to the criminal proceeding or the testimony of the witnesses in their complaint, and though the criminal trial involved the same underlying facts, I find that the testimony from that trial is not incorporated within the complaints to such an extent as to be "integral" to the pleadings. *Cf. id.* (finding it appropriate to consider trial testimony in the motion to dismiss not only because the testimony involved a criminal proceeding that was "central to the complaint," but also because the complaint "explicitly refers" to the testimony").

'cardinal principal of judicial restraint' is that 'if it is not necessary to decide more, it is necessary not to decide more.'" *Morse v. Frederick*, 551 U.S. 393, 431 (2007) (Breyer, J., concurring in judgment in part and dissenting in part) (quoting *PDK Labs. Inc. v. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment)).

I. **The City's motions to dismiss the § 1983 claims against it are granted because the factual allegations in plaintiffs' complaints do not plausibly allege a *Monell* claim.**

Both the Small plaintiffs and the Albert plaintiffs bring federal claims under § 1983 against Isaacs and the City of New York. The Small plaintiffs allege that defendant Isaacs deprived Small of his Fourth and Fourteenth Amendment rights, *see* Small Am. Compl. ¶ 37, and that the City is liable as a municipal actor because it acted with "deliberate indifference [by] fail[ing] to adequately train, supervise, discipline, sanction or otherwise direct it's [sic] police officers," *id.* ¶ 65. Likewise, the Albert plaintiffs allege that Isaacs and the unnamed police officers who took them to the police station after the shooting violated their own Fourteenth Amendment right to substantive due process by depriving them of their right to familial association. Albert Am. Compl. ¶¶ 80–85. They argue that the City is liable for these constitutional violations because it failed to train its officers to avoid the "unlawful use of force during fits of road rage and while off-duty." *Id.* ¶ 87. The Albert plaintiffs further allege that the City's official policy, which required that officers carry firearms even when off-duty, caused the plaintiffs' constitutional injuries. *See id.* ¶ 43–44; Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 14–15, Case No. 17-cv-03957, ECF No. 33-3 ("Albert Pls.' Opp'n").

Section 1983 "provides 'a method for vindicating federal rights elsewhere conferred,' including under the Constitution." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To hold a defendant liable under § 1983, "two essential elements must be present: (1) the conduct complained of must have been committed by

a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). However, even if a plaintiff satisfies these elements of a § 1983 claim, she can hold a municipality liable for a constitutional violation committed by an individual defendant only if the "deprivation of the plaintiff's rights under federal law is *caused by* a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (emphasis added) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Thus, *Monell* liability requires, as a threshold matter, an underlying constitutional violation committed by an employee acting under color of law, *and* a plausible allegation that the plaintiffs' constitutional rights were deprived as the result of an "official policy or custom of the City." *Stoeckley v. City of New York*, 700 F. Supp. 2d 489, 494 (S.D.N.Y. 2010).

Because a municipality is liable under § 1983 only if these three elements are met—(1) an employee acting under color of law; (2) the deprivation of a constitutional right; and (3) an official policy or custom—courts frequently "bifurcat[e]" their consideration of a *Monell* claim, only reaching the adequacy of a plaintiff's policy or custom allegations if they find that the plaintiffs have alleged an underlying constitutional violation committed by a state actor. *Aquino v. City of New York*, No. 1:16-cv-1577-GHW, 2017 WL 2223921, at *1–2 (S.D.N.Y. May 19, 2017); *see also Mineo v. City of New York*, No. 09-CV-2261 (RRM)(MDG), 2013 WL 1334322, at *1 (E.D.N.Y. Mar. 29, 2013) ("[T]he *Monell* claims against the City will await resolution of the claim against the individual defendant."). However, in this case I am confronted with a unique situation:

Because only the City has moved to dismiss the claims against it and neither defendant Isaacs nor the defendant John Doe police officers named in the Albert plaintiffs' complaint have had the opportunity to respond to the City's arguments, it is premature for me to resolve the claims brought against the individual defendants. Thus, while I address the arguments made by all parties regarding the "color of law" and "underlying constitutional violation" elements of the plaintiffs' claims, I resolve the motion on the basis of the plaintiffs' insufficient *Monell* pleadings.

## A. Color of Law[5]

"[I]t is by now axiomatic that 'under "color" of law means under "pretense" of law' and that 'acts of officers in the ambit of their personal pursuits are plainly excluded'" from the scope of constitutional liability. *Pitchell*, 13 F.3d at 547–48 (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945) (plurality opinion). Even where a complaint, as here, alleges "tragic facts . . . , Second Circuit case law holds that where an off-duty officer did not act under color of law, the injury inflicted on the victim is one of private violence." *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 410 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 464 (2d Cir. 2011). Though "there is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law," *Pitchell*, 13 F.3d at 548, a police officer defendant does not avoid liability under § 1983 simply by stating that his actions were taken while he was "off-duty." *See Rivera v. La Porte*, 896 F.2d 691, 695 (2d Cir. 1990) ("The off-duty status of an arresting officer does not mean that he is not acting under color of law." (citing cases)). Instead, the central question in determining whether an off-duty police

---

[5] The Albert plaintiffs argue that because the City is not representing Isaacs in this action, it "does not have standing" to make the argument that Isaacs was not acting under color of law. *See* Albert Pls.' Opp'n 4. However, this misrepresents the elements of § 1983 liability. As the City notes in response, "conduct under color of law is an element of those claims asserted [against the City] under Section 1983," and as such, the City is free to argue that this element is not met. Def. City of New York's Reply Mem. of Law in Supp. of its Mot. to Dismiss 1, Case No. 17-cv-03957, ECF No. 33-4 ("Albert Def.'s Reply").

officer acted under color of law is whether he "invokes the real or apparent power of the police department." *Pitchell*, 13 F.3d at 548.

The "color of law" inquiry is an objective one; the subjective reaction of the victim is not determinative. *See id.* at 548–49 (holding that a focus on the victim's "subjective reaction to [the officer's] conduct . . . misses the essence of the color of law requirement"). Likewise, the officer's subjective understanding of his actions is irrelevant; if the officer "was not acting with actual or pretended authority, he was not acting under color of law, and his actions were not state actions." *Id.* at 549; *see also Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 476 (E.D.N.Y. 2002) (noting that the color of law analysis "focuses on [the] nature of the officer's conduct, not on his or her subjective intent") (citations omitted); *cf. Longin ex rel. Longin v. Kelly*, 875 F. Supp. 196, 203 (S.D.N.Y. 1995) (noting that a defendant's "subjective characterization of the incident" is not dispositive in the separate but related determination of whether he was acting within the scope of his employment).

Furthermore, the fact that a police officer may have exceeded his authority or acted in a manner that would not have been authorized by the state is not dispositive to the analysis. *See Screws*, 325 U.S. at 111 (plurality opinion) ("Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it."). At the same time, the mere fact that an off-duty police officer was required, pursuant to official police department policy, to be armed at all times is not sufficient on its own to prove that he was acting under color of law. *See Stoeckley*, 700 F. Supp. 2d at 493–94. The court must look at the "totality of the circumstances surrounding the officer's acts." *Claudio*, 675 F. Supp. 2d at 408 (quoting *Lizardo v. Denny's, Inc.*, No. 97-CV-1234 FJS GKD, 2000 WL 976808, at *9 (N.D.N.Y. July 13, 2000)). Though no factor is determinative, courts frequently consider a number of circumstances

in the inquiry, including "whether defendants identified themselves as police officers at any time during the incident; . . . if defendants drew a firearm or arrested the plaintiff; [and] whether defendants were engaged in any investigation or any aspect of the traditional public safety functions of police work." *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 288 (S.D.N.Y. 2005).

As an initial matter, it is beyond dispute that the John Doe officers named in the Albert plaintiffs' complaint were acting under color of law at the time the plaintiffs allege that the officers "physically prevented [them] from aiding and comforting Mr. Small," Albert Am. Compl. ¶ 52, and "removed [them] from the scene, taking them to an NYPD precinct," *id.* ¶ 54.[6] As the Albert plaintiffs note, these officers "identified themselves as members of the NYPD, transported plaintiffs from the scene of the shooting to an NYPD precinct, and interrogated plaintiffs about the incident"—all central police activities. Albert Pls.' Opp'n 7.

The trickier question is whether Isaacs was acting under color of law. The City argues that Isaacs could not have been acting under color of law because he was off-duty, did not identify himself as a police officer, did not attempt an arrest, and was not in the process of conducting an investigation at the time of the shooting. Small Def.'s Mot to Dismiss 5. As support, the City relies primarily on *Claudio* and *Pitchell*. In both of these cases, an off-duty police officer was involved in a shooting that was preceded by a purely personal undertaking. In *Claudio*, an intoxicated off-duty officer shot and killed a driver who had recently cut off his car after the two "exchanged words." 675 F. Supp. 2d at 405. The plaintiffs made no allegations that the officer "purported to act with state authority when he confronted and then shot [the victim]"; instead, they rested their

_____

[6] The City does not argue that these officers were not acting under color of law, but instead argues that any claims against them should be dismissed on grounds of qualified immunity. Albert Def.'s Reply 8 n.10. However, I decline to reach this argument, as it was "raised for the first time in a footnote in [a] reply brief" and the plaintiffs did not have an opportunity to respond to it. *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 439 n.2 (S.D.N.Y. 2016).

arguments exclusively on the fact that the officer was using a "department-issued weapon" when he fatally shot the decedent after growing angry at his driving behavior. *Id.* at 409. Likewise, in *Pitchell*, two off-duty police officers became involved in a non-fatal shooting after they engaged in a drunken political argument with the plaintiff. 13 F.3d at 546. The plaintiff in *Pitchell* argued that the *victims* subjectively believed that the defendants were acting under color of law, but made no allegations to deny the fact that the officer violated the law "as a private citizen, not as a state actor." *Id.* at 547; *see also Bonsignore v. City of New York*, 683 F.2d 635, 638–39 (2d Cir. 1982) (holding that an off-duty police officer was not acting under color of law when he shot his wife and then committed suicide, even though he used a gun provided by the police department).

As the City rightly points out, the Small plaintiffs have alleged *no* facts in their complaint that would support a finding that Isaacs acted under color of law. *See* Small Def.'s Mot. to Dismiss 7 (noting that plaintiffs "merely state the conclusory allegation that defendant Isaacs 'engaged in the action and conduct alleged . . . in his official capacity as [a] New York City Police Officer and under the color and authority of State law'") (citing Small Am. Compl. ¶¶ 36, 63).[7]

The Albert plaintiffs, however, have provided factual allegations that are distinguishable from those in *Claudio* and *Pitchell*. Instead of resting solely on the defendant's use of a state-approved firearm, they argue that Isaacs invoked the authority of the police department as Small began to approach his car—even if he had previously been acting only in furtherance of his "personal pursuits." They allege that Isaacs "falsely believed that Mr. Small may have been someone [Isaacs] had previously arrested," Albert Am. Compl. ¶ 33, and suggest that he shot Small because he was concerned that Small recognized him as a police officer. Albert Pls.' Opp'n 5–6.

---

[7] Because I leave the "color of law" question open, I grant the Small plaintiffs leave to amend their complaint to add factual allegations that would support their argument that Isaacs acted under color of law.

Similarly, the Small plaintiffs argue in their opposition brief that Isaacs shot Small after growing concerned that Small intended to "exact street retribution" for a prior arrest or "carjack his vehicle." Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 3, Case No. 17-cv-04315, ECF No. 41-3 ("Small Pls.' Opp'n"). The plaintiffs further note that Isaacs himself, in his answer and cross-claims, alleges that he was acting under color of law. *See, e.g.*, Albert Pls.' Opp'n 6–7.[8]

Though these allegations may ultimately prove insufficient for me to find that Isaacs acted under "color of law," I do not decide this question here, as the defendant's liability can be resolved through an analysis of the plaintiffs' *Monell* claims.

**B. Underlying Constitutional Violation**

In addition to alleging that the individual defendant acted under color of law, a plaintiff must plead an "underlying constitutional violation" in order to hold a City liable under *Monell*. "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). The City does not appear to contest the fact that the Small plaintiffs plead an underlying constitutional violation on behalf of the decedent Small.[9] However, the City argues that the Albert plaintiffs' substantive due process

---

[8] Just as a plaintiff's boilerplate legal conclusions should not be accepted for their truth, neither should conclusory allegations contained in an answer. *Cf. Twombly*, 550 U.S. at 555; *Longin*, 875 F. Supp. at 203 (noting that the officer's "subjective" belief about whether or not he was acting within the scope of his employment "is not dispositive").

[9] The City does rightly argue, however, that only the administratrix of the estate, Wenona D. Small, has standing to bring § 1983 claims based on the constitutional violations suffered by decedent Small. *See* Small Def.'s Mot. to Dismiss 11–12. The other plaintiffs have not alleged their *own* constitutional injuries stemming from Small's death, and they do not have standing to raise these claims on Small's behalf. *See Harrison v. Harlem Hosp.*, No. 05 Civ. 8271(WHP), 2007 WL 2822231, at *2 (S.D.N.Y. Sept. 28, 2007) ("Under New York law, federal civil rights claims . . . may be asserted only by a decedent's 'personal representative.'"), *aff'd*, 364 F. App'x 686 (2d Cir. 2010). I discuss the Small plaintiffs in Part IV, *infra*.

claim, based on interference with their right to familial association, is not cognizable. *See* Albert Def.'s Mot. to Dismiss 18–19.[10] In its argument, the City conflates a derivative § 1983 claim based on "emotional distress, loss of society, [or] loss of services," Albert Def.'s Mot. to Dismiss 18 (quoting *Love v. Riverhead Cent. Sch. Dist.*, 823 F. Supp. 2d 193, 199 (E.D.N.Y. 2011)), with the claim alleged here—one based on the deprivation of the plaintiffs' "*own* constitutional rights." *Love*, 823 F. Supp. 2d at 199 (emphasis added). Though the City is correct that § 1983 does not permit a cause of action based on the "collateral injuries allegedly suffered personally by a victim's family members," *id.*, the Albert plaintiffs are arguing instead that their own personal right to associate as a family—a right protected by the due process clause of the Constitution—was violated by the defendant officers. They argue that they were injured when the unnamed officers separated them from Small after the shooting, *see* Albert Am. Compl. ¶¶ 52–54, and when Isaacs unlawfully used force to kill Small—allegedly with the awareness that Isaacs was in a family relationship with the plaintiffs, *id.* ¶¶ 34, 81.

Without deciding whether the Albert plaintiffs have alleged sufficient facts to plead a violation of their substantive due process rights, I briefly describe the contours of such a claim. In *Anthony v. City of New York*, the Second Circuit held that "family members have, 'in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state.'" 339 F.3d 129, 142 (2d Cir. 2003) (citations

---

[10] In their opposition brief, the Albert plaintiffs argue for the first time that their alleged constitutional violation is actually based on Isaacs's "unlawful use of his firearm," suggesting that they are making an excessive force claim on their own behalf as bystanders to the shooting. *See* Albert Pls.' Opp'n 11 (citing *Dunkelberger v. Dunkelberger*, No. 14-CV-3877 (KMK), 2015 WL 5730605 (S.D.N.Y. Sept. 30, 2015), for the principle that a plaintiff can bring an excessive force claim even in the absence of physical injury). However, their complaint alleges claims based only on the officers' intentional interference with their right to associate with Small; this is a different kind of constitutional violation, and one which is personal to them as family members of the decedent, rather than derivative alleged constitutional violations against Small. *See Love v. Riverhead Cent. Sch. Dist.*, 823 F. Supp. 2d 193, 199–200 (E.D.N.Y. 2011).

omitted) (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999)). A plaintiff must demonstrate that her separation from her family member was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.* (quoting *Tenenbaum*, 193 F.3d at 600). If another constitutional provision provides an "explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Tenenbaum*, 193 F.3d at 599 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)).[11] Though the Second Circuit has not decided whether a plaintiff must allege that the officers *intended* to interfere with the familial association right, *Patel v. Searles*, 305 F.3d 130, 137 (2d Cir. 2002), district courts in the circuit have found that a defendant's intent or deliberate indifference is necessary in order to rise to the level of a substantive due process violation. *See, e.g.*, *Cruz v. City of New Rochelle*, No. 13CV7432 (LMS), 2017 WL 140122, at *27–28 (S.D.N.Y. Apr. 3, 2017); *McCray v. City of New York*, Nos. 03 Civ. 9685(DAB), 03 Civ. 9974(DAB), 03 Civ. 10080(DAB), 2007 WL 4352748, at *27–28 (S.D.N.Y. Dec. 11, 2007).

A plaintiff may allege a claim based on familial association when the state separates family members during a critical and traumatic moment. *See, e.g.*, *Anthony*, 339 F.3d at 143 (considering, but dismissing as insufficiently "shocking," a familial interference claim when two sisters were temporarily separated while one was in the hospital). However, courts dispute whether a familial

---

[11] Throughout their pleading, some of the Albert plaintiffs' allegations seem to be predicated on a violation of the Fourth or Fifth Amendments, rather than a violation of their substantive due process rights. *See, e.g.*, Albert Am. Compl. ¶¶ 52–55 (alleging that the defendants "physically prevented" them from comforting Small despite the fact that they were "not at any time suspected of any crime or violation," that they were "tak[en] . . . to an NYPD precinct" against their will, and interrogated "outside of the presence of a lawyer."). *See also Tenenbaum*, 193 F.3d at 599–600 (finding that a child's removal and questioning outside of the presence of her parents was better analyzed as a Fourth Amendment violation rather than a substantive due process violation). However, the Albert plaintiffs have not included violations of the Fourth Amendment or Fifth Amendment as part of their causes of action.

association claim can be brought when a state actor *permanently* terminates a family relationship by unjustifiably killing the plaintiff's relative. *See Busch v. City of New York*, No. 00 CV 5211(SJ), 2003 WL 22171896, at \*4 (E.D.N.Y. Sept. 11, 2003) (noting that "the Second Circuit has not decided the validity" of a cause of action based on familial privacy rights brought by the relatives of a decedent, particularly when there is "no evidence of a purposeful intent on the part of the police officers to interfere with the familial relationship" by killing the decedent). To be cognizable, a familial association claim must allege conduct on the part of the state actors that is so egregious as to be "conscience-shocking." *McCray*, 2007 WL 4352748, at \*27 (quoting *Miner v. N.Y. State Dep't of Health*, No. 02 Civ. 3180(MBM), 2004 WL 1152491, at \*5 (S.D.N.Y. May 24, 2004)). Additionally, courts have only recognized this claim when the plaintiff is a sufficiently close relative of the decedent or the separated family member. *See, e.g.*, *Anthony* 339 F.3d at 143 n.11 (assuming, without deciding, that the constitutional protection extends to sisters); *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) ("While there may be some doubt as to the precise definition of the 'family,' there can be no question that the liberty interest in family privacy extends to a mother and her natural offspring . . . ." (citation omitted)).[12]

### C. *Monell* Liability

Even if I decided in this motion that plaintiffs plausibly alleged the prerequisites for a *Monell* claim (an underlying constitutional violation committed under color of law), I nonetheless would dismiss the § 1983 claims against the City because the plaintiffs' policy or custom

---

[12] Though I do not decide here whether the Albert plaintiffs have alleged sufficient facts to support this claim, I note that, while Z.I. and Albert undoubtedly shared a close and important bond with Small during his lifetime, Z.S., as Small's child, is the only plaintiff whose family connection has been found to be close enough to support this claim. Furthermore, in familial association claims that have survived a motion to dismiss, the plaintiff was significantly older than Z.S. was at the time of the events underlying the complaint. Though courts have not decided a case exactly like this one, the age difference may be relevant to an analysis of the "shocking, arbitrary, and egregious" nature of the defendant's conduct. *See Anthony*, 339 F.3d at 143.

allegations fail as a matter of law. To hold a municipality liable for its employees' acts, a plaintiff must demonstrate that the constitutional deprivation resulted from a governmental policy or custom. *Alwan v. City of New York*, 311 F. Supp. 3d 570, 577–78 (E.D.N.Y. 2018). There are four ways to demonstrate the existence of a policy or custom: (1) a formal policy; (2) actions or decisions taken by a municipal official with final policymaking authority; (3) "a practice so consistent and widespread that . . . [it] constitutes a custom or usage"; or (4) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with municipal employees." *Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (citation omitted). The policy or custom must be "the moving force of the constitutional violation," not merely a contributing factor. *Monell*, 436 U.S. at 694. The Supreme Court has clarified that one of the most important inquiries in this analysis is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

In this case, both sets of plaintiffs allege *Monell* liability based on the City's failure to train or supervise its employees, and the Albert plaintiffs also allege *Monell* liability based on the City's formal policy that all off-duty officers must carry firearms. Both claims fail as a matter of law.

### i. Failure to Train or Supervise

In order to make out a failure to train claim, plaintiffs must "establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also . . . identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (quoting *City of Canton*, 489 U.S. at 391). Deliberate indifference "is a stringent standard

of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). In other words, "the official made a conscious choice, and was not merely negligent." *Town of East Haven*, 691 F.3d at 81 (citations omitted). Likewise, a failure to supervise claim is premised on an allegation that the "need for more or better supervision . . . was obvious," and that the City "made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct.'" *Amnesty Am.*, 361 F.3d at 127 (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)).

Before a municipality can be held liable for either a failure to train or a failure to supervise *Monell* claim, the plaintiff must demonstrate three things: (1) "a policymaker knows 'to a moral certainty' that his or her employees will confront a given situation;" (2) the situation presents the employee with "a difficult choice of the sort that training or supervision will make less difficult or . . . there is a history of employees mishandling the situation;" and (3) that the wrong decision "will frequently cause the deprivation of a citizen's constitutional rights." *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *19 (S.D.N.Y. Mar. 26, 2015) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007)).

The Small plaintiffs make only boilerplate allegations regarding the City's *Monell* liability, alleging that the City "failed to adequately train, supervise, discipline, sanction, or otherwise direct" members of its police force, including defendant Isaacs. Small Am. Compl. ¶ 65. They further allege that the City's policies "have been described in excruciating detail in the various investigations and commissions into the Police Department," without explaining which "investigations or commissions" they are referencing.[13] *Id.* ¶ 69. They argue that the City "knew

---

[13] Furthermore, none of the exhibits attached to the Small plaintiffs' opposition motion could be characterized as an "investigation or commission" relied upon in the drafting of the complaint.

of the longstanding problem of the officers' use of firearms force during fits of road rage and while off-duty," but provide no support for this alleged knowledge. *Id.* ¶ 66. "[C]onclusory . . . language" regarding the City's policies is "insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused [the constitutional violation]." *Bradley v. City of New York*, No. 08-CV-1106 (NGG), 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009); *see also Mosca v. City of New York*, No. 17-CV-4327 (SJF)(SIL), 2018 WL 3151704, at *5 (E.D.N.Y. Apr. 24, 2018) ("[T]he Complaint is devoid of any allegations of prior similar constitutional violations[, and] [t]herefore, Plaintiff cannot plausibly allege that the Municipal Defendants acquired sufficient actual or constructive notice as to be deliberately indifferent as to the need for further screening of potential NYPD employees.").

The Albert plaintiffs provide more detailed allegations of the City's failure to train or supervise its employees, but their allegations do not plausibly make out the necessary elements of a *Monell* claim.[14] In their complaint, the Albert plaintiffs provide seventeen examples of instances in which they allege that members of the NYPD "engaged in fits of road rage and unlawful use of force while off-duty." Albert Am. Compl. ¶ 74; *see also id.* ¶ 74(a)–(q). The City notes that these incidents "span[] eleven years," which "equates to less than two incidents per year—not enough to create a policy or practice" in a workforce of "approximately 36,000 NYPD officers." Albert

---

[14] Though the bulk of the Albert plaintiffs' allegations for their *Monell* claim against the City center around inadequate training in de-escalation and the use of force while off-duty, they also allege that there is a "pattern and practice of misconduct" in which NYPD officers engage in actions designed to cover-up police misconduct, including by "provid[ing] factually inaccurate statements in order to protect other members of the NYPD who have acted unlawfully." Albert Am. Compl. ¶ 70. Likewise, the Small plaintiffs reference a "Blue Wall of Silence" that the City has "failed to tear down . . . so as to force the disclosure of these constitutional abuses and to take corrective measures." Small Am. Compl. ¶ 38 (emphasis omitted). Neither group of plaintiffs provides any additional information about these alleged practices, and they both focus their opposition motions on the other type of policy alleged—a policy of inadequate training regarding the use of force. As a result, I do not focus in detail on these allegations here, as they are too conclusory to give rise to liability under *Monell*. *See Bradley*, 2009 WL 1703237, at *3.

Def.'s Mot. to Dismiss 12–13. However, even if these incidents all took place in one year, "[a] training program is not inadequate merely because a few of its graduates deviate from what they were taught." *Jenkins*, 478 F.3d at 95. Though "a single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability," *Amnesty Am.*, 361 F.3d at 127, plaintiffs provide no information about the City's response to these allegations, nor any evidence to demonstrate that the violation of plaintiffs' constitutional rights was "a *highly predictable* consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cty. Comm'rs*, 520 U.S. at 409 (emphasis added). Moreover, the past incidents plaintiffs include in their complaint involve a significant range of factual situations; only seven out of the seventeen incidents involved *firearms* as opposed to other weapons, and, as the City notes, "it is not even clear from the allegations whether these situations involved state action, rather than private misconduct or crime," Albert Def.'s Mot. to Dismiss 14. Because the City is only liable for its employees' actions if the actions occurred while the employee was acting under color of law, the City would have no obligation to take corrective actions if the incidents occurred during purely private events. *See Claudio*, 675 F. Supp. 2d at 406. These allegations fall short of the "stringent standard of fault" necessary to plead a City's "deliberate indifference." *D.H. v. City of New York*, 309 F. Supp. 3d 52, 77 (S.D.N.Y. 2018) (quoting *Town of East Haven*, 691 F.3d at 81).

Additionally, plaintiffs fail to point to a "specific deficiency" in the City's training programs that could plausibly have caused their alleged constitutional violations. Though plaintiffs cite dictum from the Second Circuit's opinion in *Amnesty America* that suggests that the pleading standard for a failure to train claim may be lower on a motion to dismiss, that case was decided before *Twombly* and *Iqbal*, and courts now require that plaintiffs point to a "specific deficiency in the municipality's training." *Tieman*, 2015 WL 1379652, at *22; *see also Simms v. City of New*

*York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim.") (citation omitted)). The closest that plaintiffs come to identifying a specific deficiency is their allegation that Isaacs "was not trained by defendant [City] or the NYPD to deescalate rather than engage in conflicts while off-duty." Albert Am. Compl. ¶ 46. But this is an "unsupported conclusory allegation" that is not sufficient to demonstrate deliberate indifference. *Johnson v. City of New York*, No. 06 CV 09426, 2011 WL 666161, at *4 (S.D.N.Y. Feb. 15, 2011) (noting that plaintiff's *Monell* allegations failed because they did not "identify procedural manuals or training guides, nor d[id] they highlight relevant particular aspects of police training or supervision" (citation omitted)).

Furthermore, plaintiffs do not sufficiently demonstrate that Isaacs's actions present the kind of "difficult choice" that training or supervision would "make less difficult." *Noonan v. City of New York*, No. 14CV4084-LTS-JLC, 2015 WL 3948836, at *4 (S.D.N.Y. June 26, 2015) (quoting *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992)). Plaintiffs describe the tragic shooting that resulted in Small's death as plainly unjustified, despite Isaacs's false belief that Small may have intended to steal his car or confront him over a prior arrest. *See* Albert Pls.' Opp'n 22 ("[W]ithout lawful justification, defendant Isaacs shot and killed an[] unarmed man in the middle of a Brooklyn street . . . ."). But "a blatantly criminal act . . . cannot reasonably be seen as posing the type of 'difficult choice'" that would give rise to an obligation to train. *Noonan*, 2015 WL 3948836, at *4.

The Albert plaintiffs' *Monell* allegations also fail for a separate and independent reason. A City is only liable where the alleged policy or custom *caused* the specific constitutional injury

alleged by the plaintiffs. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (plurality opinion) ("There must at least be an affirmative link between the training inadequacies alleged, and the particular constitutional violation at issue."). The Albert plaintiffs' alleged constitutional violation centers around familial separation and their substantive due process rights, *not* the alleged use of excessive force. As the City notes, "plaintiffs make no attempt to plead a *Monell* claim for denial of familial rights." *See* Def. City of New York's Reply Mem. of Law in Supp. of its Mot. to Dismiss 7, Case No. 17-cv-03957, ECF No. 33-4. They have not argued that the City failed to train its officers in the constitutional rights of victims' family members, who may be permanently or temporarily separated from their loved ones following an officer's unjustified use of force. Instead, the Albert plaintiffs' *Monell* claims center on the City's alleged failure to address the "unauthorized use of force" by its employees—a preceding, but independent, constitutional violation from the one they claim. Albert Am. Compl. ¶ 77.

Even if the Albert plaintiffs' allegations were sufficient to support a *Monell* claim based on the underlying constitutional violation of excessive force, they could not plausibly allege a strong enough "causal connection" to the alleged substantive due process violation at issue here. *Tuttle*, 471 U.S. at 824 (plurality opinion). To satisfy the causal element of a *Monell* claim, plaintiffs must demonstrate that the alleged policy is the *proximate cause* of their constitutional injury, not just a but-for cause. *Marom v. City of New York*, No. 15-cv-2017 (PKC), 2016 WL 916424, at *16 (S.D.N.Y. Mar. 7, 2016). Thus, even if Small's death was a "foreseeable consequence of an[] alleged policy or custom," *id.*, the alleged substantive due process injury experienced personally by Small's relatives in the aftermath of his death is far from foreseeable. *See, e.g.*, *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 484 (N.D.N.Y. 2017) ("An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the

act is of such an extraordinary nature or so attenuates defendant's [initial conduct] from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant.") (alteration in original) (quoting *Kush ex rel. Marszalek v. City of Buffalo*, 449 N.E.2d 725, 729 (N.Y. 1983)).

### ii. Formal Policy

The Albert plaintiffs also allege that the City is liable for their injury because of its formal requirement that off-duty police officers carry firearms. *See* Albert Pls.' Opp'n 14–15. This allegation fails for many of the same reasons. Though Isaacs's possession of the firearm while off duty may have been a "but for" cause of Small's death and the subsequent constitutional injuries experienced by the Albert plaintiffs, the fact that Isaacs was carrying the weapon was not, on its own, so "closely related to the ultimate injury" of familial separation that it can be said to have "actually caused the plaintiff's deprivation." *Williams v. City of New York*, No. 16 Civ. 4315 (JGK), 2017 WL 4158903, at *6 (S.D.N.Y. Sept. 14, 2017) (finding, in a much closer causal relationship, that the plaintiff "would not have been taken to the hospital if the officers had been properly trained to deal with the mentally ill, because they would have known that he showed no signs of dangerousness").

For these reasons, the *Monell* allegations contained in both the Albert plaintiffs' and the Small plaintiffs' complaints fail as a matter of law, regardless of the viability of plaintiffs' "color of law" and "underlying constitutional violation" claims.

**II. Because Isaacs was not operating within the scope of his authority at the time of the shooting, the claims against the City that are premised on *respondeat superior* liability are dismissed.**

Both groups of plaintiffs seek to hold the City liable for the New York state law claims on the basis of *respondeat superior*. An "employer is vicariously liable for a tort committed by his servant while acting within the scope of his employment" *Mosca*, 2018 WL 3151704, at *6.

Though I explicitly decline to rule on the adequacy of plaintiffs' "color of law" allegations, "the state-law *respondeat superior* inquiry is distinct from the Section 1983 color of state law analysis." *Id.*; *see also Wahhab*, 386 F. Supp. 2d at 289-90 ("[A]lthough similar factual questions are involved [in both inquiries], the inquiries are distinct."). While "[t]he fact that a police officer uses, or abuses, his authority may be relevant in deciding whether he was acting under color of state law[,] [i]t is not relevant . . . in determining whether the actions taken were within the scope of his employment." *Mahmood v. City of New York*, No. 01 Civ. 5899 (SAS), 2003 WL 21047728, at *3 (S.D.N.Y. May 8, 2003) (holding that a police officer who "identified himself [as such], showed plaintiff his badge, and ordered [plaintiff] to pull over to the side of the road" was not acting within the scope of his employment because his "actions in detaining and assaulting [plaintiff] were not in furtherance of any police business").

Courts in New York look to several factors to determine whether an employee's action "falls within the scope of employment," including the "time, place and occasion for the act; . . . whether the act is one commonly done by such an employee; . . . and whether the specific act was one that the employer could reasonably have anticipated." *Mosca*, 2018 WL 3151704, at *6 (quoting *Mingo v. United States*, 274 F. Supp. 2d 336, 346 (E.D.N.Y. 2003)). Ultimately, an employer is only liable under a *respondeat superior* theory if the employee was "engaged in the furtherance of the employer's enterprise at the time of the employee's wrongdoing, and the employer was or could have been exercising some control over the employee's activities." *Longin*, 875 F. Supp. at 202. Importantly, the use of a weapon owned or authorized by the employer is not enough by itself to give rise to *respondeat superior* liability for an employer. *Id.*; *see also Mingo*, 274 F. Supp. 2d at 346 ("[I]t is not the source of the weapon that is used that determines employer liability . . . .").

In this case, I find that neither the Albert plaintiffs nor the Small plaintiffs have alleged sufficient facts to demonstrate that Isaacs was acting within the scope of his employment at the time that he shot and killed Small.[15] Even if Isaacs was acting under color of law when he shot Small, he was not "furthering police business . . . . Rather, he was acting out of personal rage." *Mahmood*, 2003 WL 21047728, at *4. Isaacs's tragic decision to shoot and kill Small was, if not criminal, then highly irresponsible, *cf. Davis v. City of New York*, 641 N.Y.S. 2d 275, 276 (N.Y. App. Div. 1996), and where, as here, "the intentional tort grows out of a dispute which is not job related, the doctrine [of *respondeat superior*] is inapplicable," *Vargas v. Correa*, 416 F. Supp. 266, 272 (S.D.N.Y. 1976).

As a result, the state law claims against the City that are premised on *respondeat superior* liability are dismissed.[16]

### III. Neither the Albert plaintiffs nor the Small plaintiffs have pleaded any facts to support a negligent hiring, training, or supervision claim.

In addition to their state law claims based on *respondeat superior*, both the Albert plaintiffs and the Small plaintiffs claim that the City is liable for negligent hiring, training or supervision of the defendant officers. *See* Small Am. Compl. ¶¶ 55–61; Albert Am. Compl. ¶¶ 103–104. A municipality can be held liable for negligently supervising, training, or retaining a tortfeasor even

---

[15] It is unclear whether the Albert plaintiffs' state law claims and *respondeat superior* allegations also relate to the actions of the unnamed officers. To the extent that they do, the City would be liable under a *respondeat superior* theory, because the officers were clearly acting within the scope of their employment when they arrived at the scene of the shooting and escorted plaintiffs to the police precinct for questioning.

[16] The City urges that the underlying state law claims are also legally deficient against the individual defendants. *See, e.g.* Albert Def.'s Mot. to Dismiss 19–24. Because I only decide the adequacy of the claims against the City in this motion, I do not reach these arguments. However, I note briefly that the City's argument that plaintiffs cannot sustain a claim of negligence when the underlying action was clearly intentional fails in this context, where the Albert plaintiffs allege negligent infliction of emotional distress based on the negligent actions of Isaacs *toward them*, rather than the intentional use of force towards Small. *See, e.g.*, *Sylvester v. City of New York*, 385 F. Supp. 2d 431, 445 (S.D.N.Y. 2005) ("[A]lthough a jury could find that Donnelly intentionally shot Melvin, this does not preclude actions by *bystanders* based on negligence toward them." (emphasis added)).

if the individual defendant is not liable. *Dava v. City of New York*, No. 15-cv-08575 (ALC), 2016 WL 4532203, at *12 (S.D.N.Y. Aug. 29, 2016). To make out such a claim, a plaintiff must show, "in addition to the standard elements of negligence, . . . (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury . . . ; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations omitted).

Here, neither set of plaintiffs have provided *any* factual allegations that would demonstrate that the City had any awareness about Isaacs's or the unnamed officers' "propensity for the conduct which caused the injury." *Id.* (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791, 793 (N.Y. App. Div. 1997)). Instead, they rely entirely on the conclusory assertion that the City "did not exercise reasonable care in the selection, engagement, employment, and training of its agents, servants, and employees." Small Am. Compl. ¶ 56. This is plainly insufficient to make out the claim. *See, e.g.*, *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015). Though the Albert plaintiffs argue that the City's argument regarding a lack of liability is "made self-servingly because any information regarding defendant Isaacs's prior misconduct . . . will not be made available to plaintiffs unless the case proceeds to discovery," Albert Pls.' Opp'n 9, this argument also fails. A plaintiff must allege sufficient facts to open the doors to discovery; she cannot rely on a legal conclusion—unsupported by any facts—to state a claim. *See Eng v. City of New York*, No. 10-CV-6032 (NGG)(MDG), 2012 WL 4511431, at *7 (E.D.N.Y. Sept. 11, 2012), *adopted by* 2012 WL 4568241 (E.D.N.Y. Sept. 30, 2012).

## IV. The *Small* Plaintiffs

Finally, the City argues that Small's children do not have standing to bring their claims on behalf of the estate. The Small plaintiffs do not respond in their opposition motion to the City's

arguments—either to concede or to rebut them. I agree with the City that, under New York law, only the "personal representative, duly appointed in this state . . . of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death." N.Y. Est. Powers & Trusts Law § 5-4.1(1); *see also Cruz v. Korean Air Lines Co.*, 838 F. Supp. 843, 847 (S.D.N.Y. 1993) ("Only the personal administrator may maintain the action. The distributees—here, the children—may not maintain their own cause of action." (citations omitted)). Thus, to the extent that the Small plaintiffs intended to include Small's children, Shariah Seward, S.S., and Z.S., as plaintiffs rather than simply naming them as distributees who would benefit from any damages recovered, they are not permitted to do so under New York law. *See Barrett v. United States*, 689 F.2d 324, 331 (2d Cir. 1982) (noting that only the personal representative of decedent had standing to bring a suit on behalf of the decedent "in her capacity as administratrix of her father's estate.").[17]

However, the City also argues that no damages can be recovered by an estate's distributees for the loss of a parent's care and support. While the City is correct that New York law only permits recovery for "pecuniary loss," distributees can recover for "the pecuniary loss suffered as a result of the lost *nurture, care, and guidance* they would have received if the parent had lived." *McKee v. Colt Elecs. Co.*, 849 F.2d 46, 50 (2d Cir. 1988) (emphasis added) (collecting cases). Though Small's children may not assert these claims on their own behalf, I interpret the Small plaintiffs' cause of actions regarding "lost services" as claims for the pecuniary losses caused by the deprivation of Small's "nurture, care and guidance"—not an impermissible claim based on the "loss of a parent's companionship," *id.*

---

[17] Because Z.S. is not asserting his *own* claims as a plaintiff in the Small case, and only Wenona Small has standing to bring the claims on behalf of Small's estate, this also resolves the City's concerns about claim-splitting, as Z.S. is not a proper party in the Small lawsuit.

**CONCLUSION**

For the foregoing reasons, the City's motions to dismiss the claims against it are granted. However, all claims brought against the individual defendants—both Isaacs and the unnamed officers—remain. The *respondeat superior* claim is dismissed with prejudice because this claim fails as a matter of law. *See Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile."). The negligent hiring, training, and supervision claims and the *Monell* claims against the City are dismissed without prejudice because I cannot yet say that permitting further amendment would be futile. If the plaintiffs later learn of facts that would plausibly support such claims, they may move to amend their complaints. Further, the Small plaintiffs are granted leave to amend their complaint as it pertains to their "color of law" allegations.

So ordered.

Date:   Brooklyn, New York
        October 18, 2018

                                        _____/s/_____
                                        Allyne R. Ross
                                        United States District Judge