UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
WAYNE ISAACS,                                               :
                                                            :     17-cv-03957-ARR-SMG
            Cross-Claimant,                                 :     17-cv-04315-ARR-SMG
                                                            :
    -against-                                               :
                                                            :
                                                            :
THE CITY OF NEW YORK,                                       :     OPINION & ORDER
                                                            :
            Cross-Defendant.                                :
                                                            :
----------------------------------------------------------- X

ROSS, United States District Judge:

The City of New York ("the City"), a defendant in these two civil rights actions, moves to dismiss four claims brought against it by cross-claimant Wayne Isaacs, a New York City police officer. Both lawsuits were filed by the relatives and survivors of Delrawn Small, a young man who was fatally shot by Isaacs on July 4, 2016, in Brooklyn, New York. In October 2018, I dismissed all of plaintiffs' then-existing claims against the City after I held that neither set of plaintiffs alleged sufficient facts to state a claim for *Monell* liability, *respondeat superior* liability, or negligent hiring, training, or supervision. The City now argues that Isaacs's cross-claims, which seek indemnification and damages from the City pursuant to several legal theories, must also be dismissed. For the following reasons, the City's motion is granted in part and denied in part.

## BACKGROUND

On July 3, 2016, Wayne Isaacs was employed as an officer with the New York City Police Department. Answer ¶¶ 118, 120, Case No. 17-cv-04315, ECF No. 37.[1] That day, he worked a

---

[1] The facts described here are drawn from Isaacs's answers to the plaintiffs' first amended complaints in *Albert v. City of New York* and *Small v. City of New York*. *See* Answer, Case No. 17-cv-04315, ECF No. 37; Answer, Case No. 17-cv-03957, ECF No. 30. Because both answers contain identical factual allegations pertaining to Isaacs's claims against the City, all citations to

1

shift at the 79th precinct in Brooklyn from 3:00 P.M. until 11:35 P.M. *Id.* ¶¶ 119–21. At 11:55 P.M., soon after his shift ended, he left the precinct in his personal vehicle. *Id.* ¶ 121. Eventually, while he was headed east on Atlantic Avenue, Isaacs came to a stop at a red traffic light at the intersection of Atlantic and Bradford Street. *Id.* ¶¶ 123–24. Atlantic Avenue has three eastbound lanes, and Isaacs's car was the first car in the far-right lane. *Id.* ¶¶ 125–27.

Isaacs first noticed a man walking in the crosswalk near his car while he was stopped at the red light. *Id.* ¶ 130. The man, Delrawn Small, turned right off the crosswalk and began to approach the driver's side of Isaacs's car. *Id.* ¶¶ 130, 133. As Small walked towards him, Isaacs noticed that he was "large in stature," appeared to be "upset and enraged," and "was staring at [Isaacs] with laser focus." *Id.* ¶¶ 132, 134–35. Based on Small's demeanor, Isaacs "believed that Delrawn Small . . . recognized him as a police officer from a previous arrest." *Id.* ¶ 136. Alternatively, he thought that Small may have been approaching his vehicle with the intent to commit a carjacking. *Id.* Isaacs began to fear for his physical safety, and he unholstered his firearm so that he would be prepared to protect himself. *Id.* ¶ 137. As Small approached the car, Isaacs had his driver's-side window rolled down and he held his firearm in his right hand, facing the floor of the car. *Id.* ¶¶ 129, 138.

When Small reached Isaacs's car, he shouted "I'm going to fucking kill you" at Isaacs. *Id.* ¶ 139. Small then "leaned into" the driver's side of the car and "immediately struck [Isaacs] on the right side of his face." *Id.* ¶ 140. The force of the blow caused Isaacs "to fall backwards in his seat." *Id.* ¶ 141. Isaacs "perceived that he was the victim of [a] crime" and feared that "deadly

---

the record refer to *Small v. City of New York*, No. 17-cv-04315 (E.D.N.Y.), unless otherwise noted. For this reason, I also refer to Isaacs's answers using the singular "answer" throughout this opinion. For the purpose of this motion to dismiss, I assume the truth of Isaacs's factual allegations. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

physical force" would be used against him. *Id.* ¶¶ 142–43. In response, Isaacs "discharged his firearm three times," striking Small. *Id.* ¶¶ 145–46. Small fell backwards, away from the vehicle and outside Isaacs's line of vision. *Id.* ¶¶ 146–47. After placing his car in park, Isaacs exited the vehicle and found Small "lying face down between two vehicles" behind Isaacs's car. *Id.* ¶¶ 149–50. Isaacs returned to his car, retrieved his cell phone, and called 911; he "informed the dispatcher of his location [and] the fact that he had been attacked, and requested an ambulance." *Id.* ¶¶ 152, 154. Small was later pronounced dead from the injuries he sustained during the shooting. *Id.* ¶ 30 (admitting, in response to the allegations in the *Small v. City of New York* complaint, that Small was shot "in the intersection of Atlantic Avenue and Bradford Street in Brooklyn and that [he] died.").

Following Small's death, two sets of plaintiffs brought actions against the City, Isaacs, and several other police officers. Their lawsuits, which arise under 42 U.S.C. § 1983 and New York State law, seek damages for injuries stemming from the shooting and its aftermath. Zaquanna Albert, Small's live-in partner at the time of his death, filed suit on June 30, 2017 on behalf of herself and two of her children: Z.S., a son of Albert and Small, and Z.I., Albert's daughter. *See* Compl., Case No. 17-cv-03957, ECF No. 1. Separately, Wenona D. Small, Small's wife and the administratrix of his estate, filed suit in Kings County Supreme Court on June 29, 2017, on behalf of Small's estate. *See* Compl., Case No. 17-cv-04315, ECF No. 1-1. The City of New York subsequently removed the case to federal court, *see* Notice of Removal, ECF No. 1, and both cases were consolidated before me for all pre-trial purposes on December 14, 2017 Order. After Isaacs was acquitted of all charges against him at his criminal trial, I granted the parties leave to file amended complaints on April 6, 2018. *See* Status Report, Case No. 17-cv-03957, ECF No. 24.

In his answer to the amended complaints, Isaacs asserts four cross-claims against the City for indemnification and damages. Together, the cross-claims propose several legal theories for relief against the City: (1) any damages suffered by plaintiffs were caused by the City's "culpable conduct [and] negligent acts of omission or commission," Answer ¶ 159; (2) the City is liable to Isaacs under the doctrine of *respondeat superior*, *id.* ¶ 160, which entitles Isaacs to "recover the amount" of any judgment owed to plaintiffs, *id.* ¶ 161; and (3) because all of Isaacs's actions were "within the performance of his duties and within the scope of his employment," the City must indemnify Isaacs under New York General Municipal Law section 50-k, *id.* ¶¶ 162–64.

On October 18, 2018, I dismissed plaintiffs' claims against the City.[2] *See Albert v. City of New York*, No. 17-cv-3957-ARR-SMG, 2018 WL 5084824 (E.D.N.Y. Oct. 18, 2018). Because the City's motion to dismiss was brought under Federal Rule of Civil Procedure 12(b)(6), my decision was limited to the factual allegations contained in the two complaints regarding the events that led to Small's death. *Id.* at *3; *see also Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("Generally,

---

[2] After I dismissed all existing claims against the City, both sets of plaintiffs filed second amended complaints on January 15, 2019. *See* Second Am. Compl., Case No. 17-cv-04315, ECF No. 50; Second Am. Compl., Case No. 17-cv-03957, ECF No. 40 ("*Albert* Second Am. Compl."). The *Albert* plaintiffs' second amended complaint includes claims against previously-unnamed police officers who are alleged to have unlawfully "separated plaintiffs from Mr. Small during the final moments of his life." *Albert* Second Am. Compl. ¶ 1. In addition to several claims against the individual officers, the *Albert* plaintiffs' complaint includes a *respondeat superior* claim against the City of New York based on plaintiffs' assertion that these recently-named officers were acting within the scope of their employment when they responded to the scene of Small's death after Isaacs called 911. *Id.* ¶¶ 89–91. On March 1, 2019, Magistrate Judge Steven M. Gold granted the City's request for an extension of time to file an answer on behalf of itself and the City defendants. *See* Order, Mar. 1, 2019. At the same time, Isaacs also requested an extension of time "concomitant to the City's extension." Mot. for Extension 2, Case No. 17-cv-03957, ECF No. 48. Defendants now have until March 28, 2019, to answer or otherwise respond to the plaintiffs' second amended complaints. Thus, while I previously dismissed all then-asserted claims against the City, the plaintiffs' second amended complaints assert new causes of action against the City. *But see* Mot. for Extension 1 n.1 (noting that it is "unclear whether the *Small* [second amended] complaint is directed at the City," and the City's response is not a concession that it "is required to make any response to the *Small* [second] amended complaint").

consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."). I held that the plaintiffs' factual allegations were "deficient in three primary respects," collectively foreclosing their then-existing claims against the City. *Albert*, 2018 WL 5084824, at \*4.

Though I did not decide whether Isaacs was acting under "color of law" at the time of the shooting, I held that plaintiffs could not sustain their *Monell* claims against the City because their "policy or custom allegations fail as a matter of law." *Id.* at \*9. I also held that plaintiffs' negligent hiring, training, or supervision claims failed because their complaints contained no facts that would support the conclusion that the City was aware of Isaacs's "propensity for the conduct which caused [plaintiffs'] injur[ies]." *Id.* at \*13 (quoting *Ehrens v. Lutheran Church*, 384 F.3d 232, 235 (2d Cir. 2004). Finally, I held that the factual allegations contained in plaintiffs' complaints, which described a traffic dispute that preceded Isaacs's split-second decision to use deadly force "almost immediately" after Small approached Isaacs's car, were insufficient to state a claim that Small was acting within the scope of his employment at the time of Small's death. *Id.* at \*2, \*12. My opinion ultimately rested on my conclusion that the allegations in plaintiffs' complaints described an "intentional tort [that grew] out of a dispute which is not job related." *Id.* at \*12 (quoting *Vargas v. Correa*, 416 F. Supp. 266, 272 (S.D.N.Y. 1976)). Accordingly, I found that *respondeat superior* was "inapplicable." *Id.* (quoting *Vargas*, 416 F. Supp. at 272); *see also* City Br. 3, ECF No. 53-1 ("In dismissing all [of] plaintiffs' claims for *respondeat superior* liability against the City, this Court held that the *plaintiffs* had not alleged facts supporting a plausible claim that Isaacs acted within the scope of his employment when he shot and killed the decedent." (emphasis added)).

The City now moves to dismiss Isaacs's cross-claims, arguing that Isaacs's answer fails "to allege any additional or contrary facts that could alter" the conclusion reached in my October

5

2018 decision regarding the scope of employment analysis. City Br. 7. As I explain further below, I find that Isaacs's factual allegations—in contrast to the plaintiffs' version of the moments leading up to Small's death—do just enough to "nudge[] [his] claim[] across the line from conceivable to plausible," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), thus stating a claim for indemnification that survives the City's 12(b)(6) motion. As a result, I deny the City's motion to dismiss the indemnification cross-claim brought against them, though I dismiss Isaacs's other cross-claims for failure to state a claim.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Though plaintiff need not provide "detailed factual allegations," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"Motions to dismiss cross-claims are analyzed under the same standard" as other motions to dismiss. *Am. Med. Distribs. v. Macdonald Tuskey*, No. 16-CV-6016 (VSB), 2018 WL 1478301, at *2 (S.D.N.Y. Mar. 23, 2018). The court must review the factual allegations contained in the operative complaint, accepting "all well-pleaded facts in the cross-claim as true and view[ing] them in the light most favorable to the cross-claimant." *Smith v. Village of Norridge*, No. 06 C 4250, 2008 WL 697352, at *2 (N.D. Ill. Mar. 12, 2008) (citing *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006)). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). As long as the cross-claimant provides enough facts "to raise the right to relief above a speculative level," the court must deny the motion to dismiss. *Am. Home Assurance Co. v.*

6

*Senaduana Freight Forwarders, Inc.*, No. 08-20871-CIV-TORRES, 2009 WL 10698434, at *2 (S.D. Fla. Feb. 8, 2009) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

I. **Isaacs's cross claim for indemnification survives because he plausibly alleges that he was operating within the scope of his employment at the time of Small's death.**

Isaacs's primary cross-claim seeks indemnification from the City in the event that the plaintiffs recover a judgment against him. *See* Answer ¶¶ 162–64. Pursuant to New York General Municipal Law section 50-k(3), the City

> shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount of any settlement of a claim approved by the corporation counsel and the comptroller, provided that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.

Isaacs argues that he is entitled to indemnification because his actions on July 4, 2016, were "within the performance of his duties and within the scope of his employment as [a] New York City Police Officer," and he "did not violate any of the rules and regulations" of the Police Department. Answer ¶ 162. The City does not allege that Isaacs violated any rules or committed "intentional wrongdoing or recklessness," Gen. Mun. § 50-k(3); instead, it argues that Isaacs has failed to state a claim for relief under the indemnification statute because his factual allegations demonstrate that Small's death did "not arise from any actions by Isaacs within the scope of his employment by the City," City Br. 6. Both parties appear to agree that the scope of employment analysis under section 50-k(3) is identical to the comparable analysis for a *respondeat superior* claim. *See* City Br. 7–11 (citing cases analyzing a *respondeat superior* claim in the context of the

section 50-k(3) analysis); Isaacs Opp'n 4–8, ECF No. 53-2 (same); *see also Kelly v. City of New York*, 692 F. Supp. 303, 308 (S.D.N.Y. 1988) (citing *Stavitz v. City of New York*, 471 N.Y.S.2d 272 (App. Div. 1984), a case analyzing the City's liability for the actions of its employees, while addressing a section 50-k(3) indemnification claim).

"An employee's actions fall within the scope of employment where the purpose in performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business." *Danner-Cantalino v. City of New York*, 926 N.Y.S.2d 109, 110 (App. Div. 2011) (citation omitted). Courts in New York consider several factors when evaluating whether an employee's action "falls within the scope of employment," including the "time, place and occasion for the act; . . . whether the act is one commonly done by such an employee; . . . and whether the specific act was one that the employer could reasonably have anticipated." *Mosca v. City of New York*, No. 17-CV-4327 (SJF)(SIL), 2018 WL 3151704, at *6 (E.D.N.Y. Apr. 24, 2018) (quoting *Mingo v. United States*, 274 F. Supp. 2d 336, 346 (E.D.N.Y. 2003)), *adopted by* 2018 WL 2277837 (E.D.N.Y. May 18, 2018). The employee's "subjective characterization of the incident is not dispositive of the issue of whether he acted within the scope of his employment." *Longin ex rel. Longin v. Kelly*, 875 F. Supp. 196, 203 (S.D.N.Y. 1995); *see also Gibbs v. City of New York*, 714 F. Supp. 2d 419, 422 (E.D.N.Y. 2010) (observing that "[t]he test must be an objective, not a subjective one," and "[a]n inquiry into the undeclared motives prompting the conduct of a policeman" is irrelevant to the analysis). Ultimately, the scope of employment analysis "is heavily dependent on factual considerations," *Wong v. City of New York*, 571 N.Y.S.2d 262, 263 (App. Div. 1991), and it turns on "the surrounding facts and circumstances and . . . the [employee's] conduct," rather than the employee's unsupported and conclusory assessment of his motivations or intentions, *Gibbs*, 714 F. Supp. 2d at 422.

As I explained above, I previously ruled that the plaintiffs' factual allegations were insufficient to demonstrate that Isaacs was operating within the scope of his employment at the time of Small's death. Yet even the City acknowledges that my October 2018 decision does not automatically compel the same conclusion here. *See* City Br. 1 ("Isaacs's answer adds no new facts sufficient to alter the Court's conclusions."). The reason is simple: when reviewing a 12(b)(6) motion, my analysis is limited to the facts alleged by the *claimant* in the operative complaint, and I do not consider any competing or contradictory facts that may exist in other parts of the record. *Cf. Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc.*, 486 F. Supp. 2d 496, 503 (E.D. Pa. 2007) ("The Court must only consider those facts alleged in the cross-claim in considering [a 12(b)(6) motion]."). Thus, in the instant motion, I limit my review to the facts contained in Isaacs's answer, because that pleading—as opposed to plaintiffs' complaints—provides the relevant context for Isaacs's cross-claims. *See* Answer ¶¶ 118–64; *see also Am. Home Assurance Co.*, 2009 WL 10698434, at *3 (noting, when reviewing a 12(b)(6) motion to dismiss cross-claims, that it is the cross-claimant's responsibility to make "specific reference to supporting facts to support [his] cross-claims").[3] Isaacs's answer contains its own set of factual allegations, requiring the court to

---

[3] The City cites two cases where a court held that its prior determination that the plaintiff could not sustain a *respondeat superior* claim necessarily foreclosed an associated claim for indemnification. Importantly, both cases involved summary judgment decisions, rather than motions to dismiss. *See Turk v. McCarthy*, 661 F. Supp. 1526, 1537 (E.D.N.Y. 1987) (dismissing the cross-claimant's indemnification cross-claim because the court had already held that the defendant "was not acting within the scope of his employment" at the time of the events in question); *Longin ex rel. Longin*, 875 F. Supp. at 204 ("In light of our finding . . . that defendant Kelly was not acting within the scope of his employment . . . , defendant Kelly's cross-claims for representation and indemnification are dismissed." (citation omitted)). In contrast, because my October 2018 decision responded to the City's 12(b)(6) motion, I did not make a determination regarding the merits of Isaacs's claim that he was acting within the scope of his employment when he shot and killed Small, and I also do not reach the merits of his claim here. *See, e.g., Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) ("The purpose of Rule 12(b)(6) is to test . . . the formal sufficiency of the [claimant's] statement of a claim for relief *without* resolving a contest regarding its substantive merits.").

engage in an independent analysis of his claim for indemnification. *Cf. Mosca v. City of New York*, No. 17-CV-4327 (SJF)(SIL), 2018 WL 6835524, at *10 (E.D.N.Y. Dec. 26, 2018) (observing, in dismissing defendant's cross-claims, that the cross-claimant "fail[s] to assert any additional facts" beyond the underlying complaint, and "[o]n that basis alone," the claims should be dismissed), *adopted in relevant part by* 2019 WL 938936 (E.D.N.Y. Feb. 25, 2019).

In comparison with the facts alleged in the plaintiffs' complaints, Isaacs's answer provides a markedly different representation of the events immediately preceding Small's death. Plaintiffs alleged that the interaction between Small and Isaacs began when Isaacs cut off Small's car, making eye-contact with the passengers in the car before arriving at the traffic light. *Albert*, 2018 WL 5084824, at *1. Plaintiffs alleged that Small then "began walking toward Isaacs's car" to confront him about his driving; "[a]lmost immediately" after he noticed Small approach him, Isaacs rolled down his window and shot Small three times. *Id.* at *2. These allegations describe Small as a concerned driver who was killed seconds after he began walking towards Isaacs's car, before any additional interaction could occur between the parties. Isaacs, in contrast, does not allege that the events began with a driving dispute; instead, he asserts that he first became aware of Small when he noticed a man moving intentionally towards the driver's side of his car and watching him with laser-like focus. *See* Answer ¶¶ 131, 133–34. He alleges that Small proceeded to threaten him and then used violent force against him, suggesting that he had both the means and the desire to follow through on his threat. *Id.* ¶¶ 139–43. These factual allegations help to support Isaacs's contention that he feared Small may have recognized him as a police officer or intended to steal his car, *id.* ¶ 136, linking his subjective motivation and internal concerns to Small's external behavior. *See, e.g.*, *Gibbs*, 714 F. Supp. 2d at 422 (noting that "the surrounding facts and

10

circumstances . . . [of] the servant's conduct" can be used to support and infer the employee's state of mind at the time of the underlying events).[4]

The City argues that Small's fatal shooting resulted from "a private matter completely untethered from [Isaacs's] work as an NYPD officer." City Br. 6. It argues that Isaacs's allegations—despite their differences from the plaintiffs' allegations—still fail to demonstrate that his actions were taken pursuant to his professional duties or responsibilities. *Id.* The City relies on several cases that involve longstanding personal disputes between spouses or drunken attempts by officers to use police affiliation to gain a personal advantage. *See, e.g., Mastroianni v. Incorporated Village of Hempstead*, 560 N.Y.S.2d 843, 845 (App. Div. 1990) (holding that an off-duty officer who fatally shot his wife's lover was not acting within the scope of his employment); *Turk v. McCarthy*, 661 F. Supp. at 1526, 1536 (E.D.N.Y. 1987) (holding that the City was not vicariously liable when an off-duty officer, who had identified himself as police "as a means of trying to obtain special treatment from the security guards," shot a man at an amusement park). Isaacs's allegations have little in common with these cases: There is nothing in his answer that suggests that he and Small were engaged in a personal dispute or disagreement that predated Small's use of physical violence. Instead, Isaacs plausibly alleges that his use of force was compelled by his obligations as a police officer. He alleges that he shot Small in order to prevent Small from committing a serious crime and to protect himself from imminent and probable harm—both of which fall within his duties as an employee of the City. *See, e.g., DeVito v. Barrant*, No.

---

[4] Plaintiffs also alleged that Isaacs thought that Small may have recognized him as an officer. *See Albert*, 2018 WL 5084824, at *2. However, in contrast to Isaacs's answer, plaintiffs alleged no additional facts to support this conclusory statement or to link Isaacs's subsequent actions to his professional obligations. *See, e.g., Stevens v. Kellar*, 977 N.Y.S.2d 461, 463 (App. Div. 2013) (distinguishing, for the purpose of the scope of employment analysis, between the conclusory manner in which the officer "characterizes" his conduct and the presence of actual facts that tend to support this characterization).

03-CV-1927 DLI RLM, 2005 WL 2033722, at *8 (E.D.N.Y. Aug. 23, 2005) (holding that, under the officer's "version of events, he was arguably authorized to use deadly force" in the circumstances); Isaacs Opp'n 8 n.2 ("Deadly physical force may be used . . . when [the officer] reasonably believes that: . . . the use of deadly physical force is necessary to defend the police officer . . . from what the officer reasonably believes to be the use or imminent use of deadly physical force" (citing N.Y. Penal Law § 35.30)).

The facts of *DeVito v. Barrant* are particularly on point. There, the court denied the City's motion for summary judgment on plaintiff's *respondeat superior* claim. 2005 WL 2033722, at *8. The officer in *DeVito* alleged that he fired his gun only after the plaintiff threatened to use deadly force against him and "slashed forcefully at [the officer] with [a] knife." *Id.* at *2. These facts were sufficient to defeat a motion for summary judgment, as the officer's use of force in those circumstances was consistent with his professional duty to prevent crimes from occurring. *See id.* at *8. The City notes that the officer in *DeVito* identified himself as an officer, displaying his shield and his identification card, and first attempted to arrest the plaintiff before using deadly force—facts which are not alleged by Isaacs in his answer. *See* City Reply 3, ECF No. 53-3.[5] These circumstantial differences, however, are immaterial; at this stage of review, Isaacs need only provide a sufficient basis for a finding that he was "arguably engaged in police business," even though he was off-duty at the time of the shooting. *Medley v. City of New York*, No. CV 94-3708(RJD), 1998 WL 938731, at *3 (E.D.N.Y. Dec. 3, 1998). To survive a motion to dismiss, in

---

[5] The City suggests that Isaacs's failure to identify himself as an officer or display his badge before he shot Small forecloses his claim for indemnification. *See* City Reply 4. The City also rightly observes that an off-duty officer's display of his badge is *not*, by itself, dispositive to the scope of employment analysis, and it cites no authority to support the related but opposite claim that a failure to display a badge or identify oneself as an officer *is* dispositive to the analysis. *See also* Isaacs Opp'n 7–8.

other words, Isaacs need not prove that he was engaged in police business as long as his version of the events presents a plausible basis for that conclusion. *See, e.g.*, *Glob. Network Commcn's, Inc.*, 458 F.3d at 155 (advising that a 12(b)(6) motion "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it").

In sum, Isaacs's allegations are sufficient to state a claim that he was acting within the scope of his employment, thus providing him with a basis for an indemnification claim against the City. This conclusion is further supported by the "special" nature of "a police officer's job." *Medley*, 1998 WL 938731, at *2. Though he was off-duty at the time of the shooting, Isaacs remained "duty bound to act in his official capacity should circumstances arise which warrant police intervention." *Id.* (quoting *Hacker v. City of New York*, 229 N.E.2d 613, 615 (N.Y. 1967) (Keating, J., dissenting)); *see also Schilt v. N.Y.C. Transit Auth.*, 759 N.Y.S.2d 10, 14 (App. Div. 2003) ("It is well settled that a police officer's jurisdiction is statewide and police officers are responsible for enforcing the law any time, anywhere in this State.") (citing N.Y. Crim. Proc. Law § 140.10(3); *Alifieris v. Am. Airlines, Inc.*, 472 N.E.2d 303, 306 (N.Y. 1984))). Isaacs's factual allegations support his assertion that he was required to use force to prevent Small from committing a crime or using deadly force against him. Because these objectives are consistent with the interests of the City, he plausibly alleges that he was required "to carry out duties incumbent upon [him] in furthering [his] employer's business," *Fiore-Rosenfeld v. Town of Brookhaven*, No. 14-13166, 2015 NYLJ LEXIS 1959, at *10 (N.Y. Sup. Ct. May 5, 2015) (quoting *Beauchamp v. City of New York*, 771 N.Y.S.2d 129, 131 (App. Div. 2004)), and, as a result, he states a claim for indemnification sufficient to defeat the City's 12(b)(6) motion.

## II. The City's other arguments for dismissal of Isaacs's indemnification claim fail.

The City provides three alternative bases for dismissal of Isaacs's identification claim, arguing that: (1) the claim should be dismissed because it is not yet ripe for adjudication, (2) a

determination that Isaacs was not acting within the scope of his employment is not "arbitrary and capricious," and (3) the claim should be dismissed because Isaacs failed to file a notice of claim form with the City prior to raising this claim in his answer to the complaints. *See* City Br. 11–14, 16–17. These arguments are contradictory and premature, and they fail to explain why the court must dismiss the cross-claim at this stage of the litigation.

Though the City is correct that "[c]laims for indemnification do not generally ripen until a judgment in the underlying action is paid." *Harris v. Rivera*, 921 F. Supp. 1058, 1062 (S.D.N.Y. 1995), this well-established fact does not compel dismissal of Isaacs's cross-claim. Courts "have generally taken two approaches when third-party defendants assert indemnification claims before judgment." *Cucchiara v. Hollingsworth*, No. 15-CV-314 (KBF), 2016 WL 6068193, at *8 (S.D.N.Y. Oct. 14, 2016). Though some courts have chosen to dismiss indemnification cross-claims as unripe, *see, e.g.*, *Nevares v. Morrissey*, No. 95 Civ. 1135(JGK), 1998 WL 265119, at *9 (S.D.N.Y. May 22, 1998), it is far more common for courts in this circuit to retain jurisdiction over a technically unripe indemnification claim in the interests of judicial economy and fairness, *see, e.g.*, *Hanson v. New York City*, No. 15-CV-1447 (MKB), 2018 WL 1513632, at *23 (E.D.N.Y. Mar. 27, 2018); *Harris*, 921 F. Supp. at 1062 (observing that "courts have created a broad exception" to the rule that indemnification claims do not ripen until a judgment is rendered (citing *Mars Assocs. v. N.Y.C. Educ. Constr. Fund*, 513 N.Y.S.2d 125, 133 (App. Div. 1987))).

In this case, judicial economy and fairness are served by the court's retention of the indemnification claim. It would be a significant waste of judicial resources to require Isaacs to file a separate claim in state court after a judgment is rendered against him. *See, e.g.*, *Banks v. Yokemick*, 144 F. Supp. 2d 272, 285 (S.D.N.Y. 2001). I am not convinced by the City's argument that the court should dismiss Isaacs's indemnification claim due to its prematurity. Instead, I agree

14

with the other courts that have held that it is far preferable to retain jurisdiction over the claim but "defer[] consideration of the indemnification cross-claim until after a verdict as to liability has been entered." *Hanson*, 2018 WL 1513632, at *23 (quoting *Cucchiara*, 2016 WL 6068193, at *8).[6] Until a final determination on Isaacs's liability has been made, the indemnification claim exists only as a placeholder; the City cannot be forced to actively litigate the claim unless and until a judgment is rendered against Isaacs. *Cf. Hogan v. City of New York*, No. 04-CV-3298 (JFB)(SMG), 2008 WL 189891, at *6 (E.D.N.Y. Jan. 18, 2008) (holding that the City is not required to make a final determination about indemnification until after a final judgment has been rendered, and therefore a claimant cannot force the court or the City to make such a decision before trial). I thus conclude that the City is not prejudiced by the court's retention of the indemnification claim, and I exercise my discretion to retain the claim despite its technical prematurity.

Second, the City argues that its conclusion that Isaacs was not acting within the scope of his employment at the time of Small's death is not arbitrary and capricious, and therefore, it should not be set aside by this court. City Br. 11 (quoting *Cucchiara*, 2016 WL 6068193, at *5). The question of whether an employee's acts were committed within the scope of his employment such

---

[6] The City recognizes that many courts retain jurisdiction over a technically unripe indemnification claim, but it argues that I should follow the lead of the court in *Cucchiara v. Hollingsworth* and dismiss Isaacs's claim here. The City's citation to *Cucchiara* is inapposite. First, *Cucchiara* involved a motion by the defendant for leave to implead the City, rather than the dismissal of an already-asserted indemnification claim included in a timely answer to the underlying complaint. *See* 2016 WL 6068193, at *2. Second, though the court in *Cucchiara* found that it would prejudice the City to require it to remain in the action, the same conclusion does not apply here, as the City remains a defendant to the *Albert* plaintiffs' complaint based on the plaintiffs' assertion of new causes of action against the previously unnamed defendant officers. *See supra* note 2. Finally, to the extent that *Cucchiara* is inconsistent with the weight of authority in this circuit, I am more persuaded by the courts that have held that "[j]udicial economy dictates that [an indemnification] cross-claim against the City be litigated at the same time as [the plaintiff's] primary claim," *Woo v. City of New York*, No. 93CIV7007(AJP)(HBD), 1996 WL 457337, at *14 (S.D.N.Y. Aug. 14, 1996).

15

that the employee is "entitled to . . . indemnification by the City" is a matter that should be "determined in the first instance by the Corporation Counsel . . . and his determination may be set aside only if it lacks a factual basis, and in that sense, is arbitrary and capricious." *Banks*, 144 F. Supp. 2d at 284 (emphasis omitted) (quoting *Williams v. City of New York*, 476 N.E.2d 317, 318 (N.Y. 1985)). The arbitrary and capricious standard of review applies to decisions regarding the City's representation of an employee in a legal action as well as the related, but distinct, decision by the City regarding indemnification of an employee. *Id.* However, as the City itself acknowledges, the Corporation Counsel does not make a final decision about whether to indemnify an employee until *after* a judgment has been rendered against the employee. *See* City Br. 13 (quoting *Cucchiara*, 2016 WL 6068193, at *8). This is because the City does not decide whether to indemnify an employee until the issue is ripe, which does not happen until a finding of liability has been made. *Id.*; *see also Hogan*, 2008 WL 189891, at *3 ("[I]ndemnification is premised either upon the existence of a judgment obtained in court against the employer or upon the settlement of a claim, and there is no suggestion that an indemnification decision must be made in advance of either of those triggering events."). In other words, the fact that Isaacs's claim for indemnification will not technically ripen until a judgment is rendered against him also requires the court to reject this argument for dismissal.

The City points out that it previously declined to represent Isaacs in this action, purportedly based on its conclusion that Isaacs was not acting within the scope of his employment at the time of the events on July 4, 2016. *See* City Br. 10 n.12; *see also* City Reply 8. But the City's decision regarding representation of an employee is not the same as its decision regarding indemnification

16

of an employee.[7] The representation decision arises at a different period of time in the litigation, and it falls within a different subsection of the statute. *See* Gen. Mun. § 50-k(2) (setting forth the criteria for the City's representation of an employee in a legal action); *see also Banks*, 144 F. Supp. 2d at 281, 287 (holding that the City's decision to decline representation of the defendant "cannot be deemed arbitrary or capricious," while expressly reserving a related review of the indemnification decision until after "the jury returns a verdict of liability" against the employee). As a result, even when the City has previously declined to represent an employee, courts regularly defer consideration of a separate claim for indemnification until the issue becomes ripe. *See, e.g.*, *Banks*, 144 F. Supp. 2d at 287 (holding that the court will wait to consider the indemnification question until "after the jury has returned its verdict on the plenary action, and after the City has had a reasonable opportunity, following its assessment of the evidence at trial, to decide whether or not it will indemnify"); *Hanson*, 2018 WL 1513632, at *23 ("[T]he Court sees no reason to adjudicate the indemnification issues prior to any liability determination.").[8] Though a final

---

[7] Moreover, this matter comes before the court on a 12(b)(6) motion to dismiss, which means that the court is not entitled to review documents outside of the pleadings unless those documents are incorporated within the complaint by reference. The letter in which the City informed Isaacs that it would not represent him in this action is not before the court, so the court has no basis for concluding that the City made its representation decision based on a finding that Isaacs was not acting within the scope of his employment. Even if the City declined representation due to a legitimate, fact-based conclusion that Isaacs was not operating within the scope of his employment, *see* City Reply 8, the statute contemplates a bifurcated, two-step process of representation and indemnification, and the City's final decision on indemnification is not made until after a verdict is entered against the employee. *See* § Gen. Mun. 50-k(2)–(3); *Cucchiara*, 2016 WL 6068193, at *5, *8 (citing cases).

[8] Admittedly, the issues before the court in this case are different from those decided by the courts in the other cases cited by the parties. In *Banks* and *Hogan*, for example, the cross-claimants sought a prejudgment indemnification decision by the court, while the City asked the court to allow it to delay its decision until after the conclusion of the trial. *See Banks*, 144 F. Supp. 2d at 274; *Hogan*, 2008 WL 189891, at *1. In contrast, in this case, the City asks the court to *approve* a prejudgment determination on indemnification. The City's position in this case contradicts the positions it has taken in the other cases cited by the parties, and the City provides no authority to support its

indemnification determination by the City may ultimately survive the deferential "arbitrary and capricious" review, it is too early for the court to decide this issue.

For many of the same reasons, I am not convinced by the City's argument that the indemnification cross-claim must be dismissed because Isaacs has not yet filed a notice of claim form with the City. As Isaacs points out, a notice of claim form need not be filed until the claim is technically ripe for adjudication. *See* Isaacs Opp'n 13 (citing *Wong v. Yoo*, 649 F. Supp. 2d 34, 77 (E.D.N.Y. 2009)). "[T]he City's argument that the § 50-k(3) claim[] must be dismissed in light of [Isaacs's] failure to serve a notice of claim fails precisely because the § 50-k(3) claim[] [is] technically premature." *Wong v. Yoo*, 649 F. Supp. 2d at 77. Though the City has already made a decision not to *represent* Isaacs, it has not made a "'final and binding' determination on the [indemnification] issue, and therefore, no claim has yet 'arise[n]' to trigger the notice-of-claim requirement." *Id.* (first citing N.Y. C.P.L.R. 217(1); then quoting Gen. Mun. § 50-k(6)).

### III. Isaacs's other cross-claims are dismissed for failure to state a claim.

In addition to his indemnification cross-claim, Isaacs asserts three alternative claims for damages against the City. The first cross-claim argues that any injuries suffered by plaintiffs were caused by the negligence and "culpable conduct" of the City. Answer ¶ 159. The second and third cross-claims collectively assert a claim for *respondeat superior*, arguing that Isaacs is "entitled to recover the amount" of any judgment rendered against him from the City. *Id.* ¶¶ 160–61.

The City's motion to dismiss these cross-claims is granted. First, Isaacs fails to respond to the City's arguments for dismissal of these claims, thus abandoning his right to assert them. *See Dawson v. City of New York*, No. 13-CV-5956 (JMF), 2014 WL 5020595, at *3 (S.D.N.Y. Oct. 8,

---

contention that the statute authorizes it to make an indemnification decision before trial. Moreover, Isaacs cites to cases that suggest that such a decision may not be made until after trial, *see* Isaacs Opp'n 11–12, and the City itself asserts that it will not make its determination in these cases until a judgment is rendered, *see* City Br. 13.

2014) ("Plaintiff appears to have abandoned those claims insofar as he does not oppose Defendant's motion to dismiss them."). Moreover, Isaacs asserts no facts to support his argument that Small's death and the resulting injuries suffered by the plaintiffs were caused by the City's own negligent conduct. Additionally, the doctrine of *respondeat superior*, which entitles a plaintiff to recover from an employer for injuries suffered as a result of an employee's actions, is a "legal *non sequitur*" in this case. City Br. 15. Isaacs seeks to recover from his employer for any damages that are claimed by the *plaintiffs*, rather than for injuries that he suffered individually due to the conduct of other employees. As discussed above, Isaacs properly states a claim for indemnification, but his *respondeat superior* cross-claim is inapplicable to the facts of this case.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss Isaacs's cross-claims is granted in part and denied in part. Specifically, the indemnification cross-claim remains in the case, but the first, second, and third cross-claims are dismissed for failure to state a claim. In the event that a judgment is rendered against Isaacs, the City may renew its claim that its final determination regarding Isaacs's entitlement to indemnification is not arbitrary and capricious.

SO ORDERED.

Date: March 13, 2019 _____/s/_____
      Brooklyn, New York       Allyne R. Ross